Jeffrey J. Hepworth, ISB No. 3455
J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICE
2229 W. State Street
P.O. Box 2815
Boise, ID 83701-2815
Telephone: (208) 333-0702
Facsimile: (208) 246-8655
courtservice@idalawyer.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENT E. HILLIARD, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>TWIN FALLS COUNTY SHERIFF'S OFFICE, a Public Entity, TWIN FALLS COUNTY, a Public Corporation,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION.

COMES NOW, Plaintiff Brent E. Hilliard for causes of action for employment-related discrimination and wrongful termination pursuant to the Equal Opportunity for Individuals with Disabilities Act and Americans With Disabilities Act, 42 U.S.C. 12112 *et seq*. ("ADA"), the Family Medical Leave Act, 29 U.S.C. 2615 *et seq*. ("FMLA"), and the Idaho Human Rights Act, I.C. § 67-5909 *et. seq.*("IHRA"). Defendants also violated the Due Process clause of the Fourteenth Amendment of the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, and

- 1

Defendants are liable for their tortious conduct in the form of intentional and negligent infliction of emotional distress.

## II.  PARTIES, JURISDICTION, AND VENUE

1.  The Plaintiff Brent E. Hilliard is currently and at all material times was a resident of Twin Falls County, State of Idaho. Mr. Hilliard at all material times was employed as a Captain of the Twin Falls County Sheriff's Office. Plaintiff will hereinafter be referred to as "Cpt. Hilliard" or "Plaintiff."

2.  Defendant Twin Falls County is a public corporation pursuant to I.C. § 31-601, located in the County of Twin Falls, State of Idaho. Twin Falls County is liable for the wrongful action of its officers and agents acting under color of their authority, including members of the Twin Falls County Sheriff's Office.

3.  Defendant Twin Falls County Sheriff's Office ("TFCSO") is a governmental sub-entity formed in Twin Falls County, State of Idaho, that is also responsible and liable for the wrongful actions of its officers and agents acting under their authority or apparent authority, including Twin Falls County Sheriff Tom Carter and Chief Deputy Don Newman.

4.  Defendants Twin Falls County and Twin Falls County Sheriff's Office will be referred to jointly as "Defendants" in instances where Plaintiff alleges both entities acted jointly, or may otherwise each be separately liable for the conduct or omissions alleged.

5.  This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331. The Plaintiff asserts federal subject matter jurisdiction pursuant to 42 U.S.C. 12112 *et seq.*, 29 U.S.C. § 2615 *et seq.*, and 42 U.S.C. § 1983.

6.      This Court has supplemental jurisdiction of the state law claims and tortious causes of action asserted herein pursuant to 23 U.S.C. § 1367. The factual basis of the state law claims brought under the Idaho Human Rights Act and tortious conduct are identical to the operative facts underlying the federal claims.

7.      Venue is proper pursuant to 28 U.S.C § 1391, as all Defendants reside in the State of Idaho, and all acts or omissions occurred within the judicial district of the United States District Court for the District of Idaho.

### III. **GENERAL ALLEGATIONS**

8.      Cpt. Hilliard was hired by TFCSO on October 21, 1996. Cpt. Hilliard served as a supervisor for the past fifteen years, beginning as a Corporal and advancing to the rank of Captain in 2010. Cpt. Hilliard holds a management certificate, which is the highest accreditation the Idaho Peace Officer Standards and Training ("POST") Academy offers.

9.      Over the course of his career, Cpt. Hilliard maintained positive performance evaluations, and to his knowledge never received any significant disciplinary actions until the events of his wrongful termination in 2017.

10.     In approximately mid-April 2017, Cpt. Hilliard informed his supervisor, Chief Deputy Don Newman, that Cpt. Hilliard had been battling depression related to disturbing events he witnessed over the course of his career of service with the TFCSO. Cpt. Hilliard informed Chief Deputy Newman that he needed to seek medical help. Cpt. Hilliard began receiving medical attention from a licensed therapist, Dr. Mark Gritton.

11.     Cpt. Hilliard's depression was aggravated by a back injury he suffered in spring 2017, which required surgery on May 9, 2017. Cpt. Hilliard was unable to work for approximately one month after the surgery.

12.     Cpt. Hilliard's mental and physical impairments are alleged to be "disabilities" as the term is defined under 42 U.S.C. § 12102.

13.     Cpt. Hilliard was released by his doctors to return to work part-time. Prior to returning to work, Cpt. Hilliard was given pain medication to assist with his recovery. TFCSO was able to accommodate Cpt. Hilliard by placing him on light administrative duty as he recovered. Cpt. Hilliard returned to work in approximately June 2017.

14.     On July 8, 2017, Chief Deputy Newman was advised that Cpt. Hilliard was taking pain medication for pain control, consistent with his doctor's orders.

15.     On July 10, 2017, Cpt. Hilliard was called into a meeting with Sheriff Carter and Chief Deputy Newman to discuss his use of pain medication. Cpt. Hilliard's peers, Cpt. Tim Miller and Cpt. Doug Hughes were also present. Cpt. Hilliard asked that Cpt. Miller and Cpt. Hughes be excused given the sensitive personal nature of the meeting. During the meeting, Chief Deputy Newman indicated that two officers, Lt. Barnhill and Lt. Brown had "expressed concerns" that Cpt. Hilliard was under the influence of prescription medication while on duty. Cpt. Hilliard informed them that the only medication he was using on-duty was the pain medication he had been prescribed by his doctors.

16.     Sheriff Carter requested that Cpt. Hilliard go home and remain off duty until he was off of all pain medication, in contravention to Cpt. Hilliard's doctors' advice, TFCSO employment policies, and the ADA.

- 4

17. Within one week, on or around July 17, Cpt. Hilliard informed Chief Deputy Newman that he was off of all pain medications and ready to return to work.

18. On July 20, 2017, Cpt. Hilliard was called into another meeting with Sheriff Carter, Chief Deputy Newman, as well as legal counsel from the Twin Falls County attorney's office. Cpt. Hilliard was immediately informed that he was being placed on "unofficial administrative leave." No reason was given for the adverse employment action. TFCSO required Cpt. Hilliard to submit to a "Fitness for Duty" evaluation.

19. Cpt. Hilliard alleges that the "Fitness for Duty" evaluation was not job-related and was not otherwise consistent with Defendants' business necessity.

20. On July 27, 2017, Chief Deputy Newman drove Cpt. Hilliard to his "Fit for Duty" evaluation with Dr. Tye. The evaluation included several written evaluations, followed by a face-to-face meeting with Dr. Tye. During this meeting, Cpt. Hilliard expressly informed Dr. Tye that he was no longer taking Tramadol or any other pain medication.

21. At the conclusion of the evaluation, Chief Deputy Newman was invited to join Dr. Tye and Cpt. Hilliard for a meeting. At that time, Dr. Tye verbally stated that he believed Cpt. Hilliard was "fit for duty" and that the best thing for Cpt. Hilliard's health was that he return to work.

22. Upon return to the TFCSO office, Cpt. Hilliard expressly requested that Chief Deputy Newman keep his personal matters confidential, to which Chief Deputy Newman replied that he would "tell his secretary to keep the matter confidential."

23. Cpt. Hilliard also asked Chief Deputy Newman if he could return to work. He responded that they needed to wait for Dr. Tye's written report before moving forward.

24.   Subsequent to Dr. Tye's verbal conclusion that Cpt. Hilliard was fit for duty, Chief Deputy Newman called Dr. Tye directly to discuss Cpt. Hilliard. During the conversations, Chief Deputy Newman alleged, without any basis, that Cpt. Hilliard had not been entirely open during his assessment, and accused Cpt. Hilliard of having a history of substance abuse.

25.   Dr. Tye released his initial report on August 3, 2017. In stark contrast from the in-person meeting with Cpt. Hilliard on July 27, 2017, Dr. Tye designated Cpt. Hilliard "unfit for duty." Of note, Dr. Tye's report expressly relied upon a private telephone conversation Dr. Tye had with Chief Deputy Newman on August 1, 2017. Dr. Tye's report relied upon Deputy Chief Newman's statements in which Chief Deputy Newman alleged, without any basis, that Cpt. Hilliard had a history of "substance abuse."

26.   Dr. Tye's report made recommendations headlined "TREATMENT RECOMMENDATIONS/RETURN TO DUTY."

27.   Cpt. Hilliard thereafter fully and substantially complied with all of Dr. Tye's treatment recommendations.

28.   Per the report recommendation, Cpt. Hilliard continued to meet with his therapist, Mark Gritton, LCPC, and also met with Shelly Wray, Psychiatric Nurse Practitioner. Cpt. Hilliard reached out to Dr. Tye to confirm if his therapy sessions were sufficient to meet the objectives set out in Dr. Tye's report. Dr. Tye stated that they would meet the criteria.

29.   Per the report recommendation, Cpt. Hilliard also took a GAIN Substance Abuse assessment.

30.   On August 17, 2017, Cpt. Hilliard was asked to attend another meeting with Sheriff Carter and Chief Deputy Newman. Upon arrival, Cpt. Hilliard was surprised to find County Attorney Rosemary Emory and Human Resources Director Elaine Molignoni were also present. Cpt. Hilliard

was succinctly given a letter that informed him that TFSCO was taking an adverse employment action against him and that Cpt. Hilliard was no longer on "Administrative Leave." The letter informed Cpt. Hilliard that he would need to use vacation time and sick leave to be off work. He was also informed by Ms. Molignoni that he needed to meet with Shelly Wray, PNP, to fill out Family Medical Leave Act paperwork.

31. Cpt. Hilliard continued his therapy with Mark Gritton and Shelly Wray. By August 21, 2017, Cpt. Hilliard received letters from both Mark Gritton and Shelly Wray stating that they believed Cpt. Hilliard was able to return to work, and even recommending that returning to work would be the best solution to Cpt. Hilliard's continuing battle with depression.

32. Cpt. Hilliard forwarded Elaine Molignoni the letter from Shelly Wray, who informed him that since he could return to work, there was no need to fill out the FMLA paperwork.

33. On August 27, 2018, Cpt. Hilliard received a call from Sheriff Carter who informed him that it was "imperative" that he pass his Fit for Duty evaluation that would take place the next day. Sheriff Carter plainly told him that if he passed the test, he would still have a job, but if he was not determined fit for duty, he could no longer be employed with TFCSO.

34. On August 28, 2017, Cpt. Hilliard was taken by Deputy Chief Newman to take the final Fit for Duty evaluation. After taking the tests, Cpt. Hilliard asked Dr. Tye whether he thought he was fit for duty or not. Dr. Tye verbally responded, "yes, I am leaning that way."

35. Dr. Tye released his final report on September 6, 2017. The report made "no recommendation" whether Cpt. Hilliard was fit for duty. However, there are a number of irregularities and erroneous factual allegations in Dr. Tye's report that demonstrate TFSCO directly interfered in the analysis provided.

36. For example, the final report speaks critically of Cpt. Hilliard for stating that his pain at the time of the evaluation was "0–1," but the report questions why Cpt. Hilliard would be using Tramadol. In reality, Cpt. Hilliard informed Dr. Tye that he had not used Tramadol since July 7, 2017, or any time since and therefore was not taking the drug.

37. The report offered a diagnosis of "major depression, severe" and erroneously stated the depression was caused by Serotonin Syndrome that the report concludes was generated by an interaction with anti-depressant and pain medication. In reality, Cpt. Hilliard once had an adverse reaction to his medication after being prescribed Prozac, which temporarily caused Serotonin Syndrome. There is no justification for the determination Cpt. Hilliard's depression was related to the Serotonin Syndrome or substance abuse.

38. The report references multiple phone conversations with Chief Deputy Newman, who once again cited a broader history of substance abuse than was reported in the GAIN assessment. Dr. Tye solely relied upon Chief Deputy Newman's accusations as an indication Cpt. Hilliard suffered from a broader substance abuse problem that could not be fully resolved or treated.

39. Cpt. Hilliard alleges Chief Deputy Newman's allegations of substance abuse were without merit and motivated by discriminatory animus.

40. More importantly, the "numerous" telephone conversations with Chief Deputy Newman suggests that TFCSO directly interfered in what was supposed to be an unbiased medical evaluation of Cpt. Hilliard's ability to serve, a substantive right guaranteed under federal law and the TFCSO and Twin Falls County employment policies.

41. On September 6, 2017, Deputy Chief Newman sent Cpt. Hilliard a text message informing him that he had received Doctor Tye's final report making no recommendation and told him that he

would be sending the report to the legal department. Cpt. Hilliard reasonably understood the intention of this text message was to inform him that he would be terminated from TFCSO.

42. Following the discriminatory treatment that began July 10, 2017, the devastating news that he had not been declared fit for duty, and with the reasonable understanding that he would be terminated by TFCSO— a career which he loved and had dedicated his life to for nearly twenty years—Cpt. Hilliard came within inches of taking his own life in the late evening hours of September 7, 2017. Regretfully, Cpt. Hilliard indulged in alcohol, drove to a remote location, and for a time considered taking his own life with a firearm. Thankfully, Cpt. Hilliard reconsidered his actions and decided to return home to his family. On his way home, Cpt. Hilliard was stopped and arrested for suspicion of Driving Under the Influence.

43. On September 11, 2017, Cpt. Hilliard received a Notice of Suspension with Pay from Chief Deputy Newman. The letter stated that he was being investigated and would be subject to discipline for the events that occurred on September 7, 2017.

44. Cpt. Hilliard was given a pre-disciplinary hearing before Chief Deputy Newman on September 26, 2017. Cpt. Hilliard was officially terminated on September 28, 2017. Cpt. Hilliard appealed his final termination and was given an appeal hearing before Sheriff Carter. His appeal was denied on approximately October 6, 2017. Cpt. Hilliard thereby exhausted his administrative remedies for the unlawful termination.

45. Cpt. Hilliard filed a Notice of Tort Claim on October 30, 2017. Therefore Cpt. Hilliard has complied with the notice requirements under the Idaho Tort Claim Act, Title 6, Chapter 9, Idaho Code.

46. Cpt. Hilliard filed a complaint with the Idaho Human Rights Commission and EEOC on October 30, 2017. Cpt. Hilliard received his Notice of Right to Sue on December 5, 2018.

## IV. CAUSES OF ACTION

### COUNT ONE:

**Violations of the Equal Opportunity for Individuals with Disabilities Act and Americans With Disabilities Act, 42 U.S.C. 12112 *et seq*. ("ADA")**

47. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

48. Plaintiff had a "disability" as defined by 42 U.S.C. § 12102. Cpt. Hilliard was therefore a "qualified individual" as defined by 42 U.S.C. § 12112.

49. Defendants discriminated against Cpt. Hilliard when they characterized Cpt. Hilliard's use of prescription medicine as "substance abuse" or "illegal drug use."

50. Defendants discriminated against Cpt. Hilliard when they erroneously required him to submit to a medical examination that was not job-related and was not consistent with business necessity.

51. Defendants discriminated against Cpt. Hilliard when they took adverse employment action by placing Cpt. Hilliard on "unofficial administrative leave" due to his actual or perceived disabilities.

52. Defendants discriminated against Cpt. Hilliard when they interfered with Cpt. Hilliard's unbiased "Fitness for Duty" evaluation by providing false information and allegations of substance abuse to Dr. Tye.

53. Defendants discriminated against Cpt. Hilliard because of his actual or perceived disabilities when they improperly divulged confidential information from Cpt. Hilliard's pre-employment entrance examinations, including information obtained in his pre-employment polygraph test to third-parties, including Dr. Tye.

54. Defendants discriminated against Cpt. Hilliard when they placed him on unpaid Administrative Leave and failed to accommodate Cpt. Hilliard by allowing him to remain on paid light administrative duty.

55. Defendants discriminated against Cpt. Hilliard because of his actual or perceived disabilities when they required him to submit to a GAIN substance abuse evaluation, which was not employment related or required by business necessity.

56. Defendants discriminated against Cpt. Hilliard because of his actual or perceived disabilities when they again interfered with his second "Fit for Duty" evaluation by again interfering with Dr. Tye's assessment by providing false information and making unfounded allegations of substance abuse. Defendants further discriminated against Cpt. Hilliard by relying on the medical report that they knew to be falsified, or otherwise inaccurate due to the Chief Deputy Newman's interference and tampering.

57. Defendants discriminated against Cpt. Hilliard when they terminated him on September 28, 2017 because of his actual or perceived disabilities. Cpt. Hilliard alleges that his termination was motivated by discriminatory animus towards his disabilities. Cpt. Hilliard alleges that any other reason(s) given for his termination are pretextual.

58. As a direct and proximate result of Defendants' discrimination, Cpt. Hilliard has suffered damages, including but not limited to lost salary and wages, loss of employment benefits and retirement benefits, attorney's fees, expert fees, court costs, and severe emotional distress and other non-economic damages.

## COUNT TWO:

**Violation of the Family Medical Leave Act, 29 U.S.C. 2615 *et seq*. ("FMLA")**

59. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

60. Cpt. Hilliard was entitled to exercise paid and/or unpaid medical leave pursuant to 29 U.S.C. § 2612 because of serious health conditions arising from PTSD and back surgery.

61. Defendants discriminated against Cpt. Hilliard in violation of 29 U.S.C. 2615(a)(2) by considering Cpt. Hilliard's use of FMLA leave as a negative factor in the decisions to place Cpt. Hilliard on administrative leave, to place Cpt. Hilliard on unpaid leave, to subject Cpt. Hilliard to improper medical examinations, and otherwise considered his use of FMLA leave in the decision to terminate Cpt. Hilliard.

62. Defendants interfered with, restrained, and otherwise denied Cpt. Hilliard access to rights guaranteed under Title 29, Chapter 28 by instructing him not to fill out necessary FMLA paperwork, and otherwise terminating Cpt. Hilliard before he could exercise his right to medical leave.

63. As a direct and proximate result of Defendants' discrimination and interference with Cpt. Hilliard's FMLA rights, Cpt. Hilliard suffered damages in the form of lost wages, lost employment and retirement benefits, and increased medical expenditures.

## COUNT THREE:

### Violation of Due Process, 42 U.S.C. § 1983

64. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

65. Plaintiff was an employee of Twin Falls County and the TFCSO, which are both sub-entities of the State of Idaho. Defendants were therefore acting at all times under color of statute, ordinance, regulation, custom or usage of the State of Idaho. Cpt. Hilliard thereby falls under the protection of the Fourteenth Amendment prohibition that no State may deprive any person of "life, liberty, or property, without due process of law."

66. Cpt. Hilliard had a liberty interest in his name, his reputation, his honor, and his integrity.

67. Cpt. Hilliard also had a liberty interest to be free from invasive, unnecessary, and irrelevant medical examinations and inquires, as set forth under 42 U.S.C. § 12112 and the Twin Falls County Employment Manual, § 160-04. The Twin Falls County Employee Manual further creates a liberty interest that such examination will be provided at no cost to the examinee and will be performed by a physician or a licensed medical facility.

68. Cpt. Hilliard possessed a property interest in maintaining the security and confidentiality of his preemployment examination results, as well as a liberty interest in keeping his personal medical records private.

69. Defendants violated Cpt. Hilliard's liberty interests by accusing him of abusing alcohol and drugs and alleging that he was not fully truthful to Dr. Tye without Due Process of law.

70. Defendants denied Cpt. Hilliard Due Process by requiring him to undergo an invasive and unnecessary medical examination without having an adequate business necessity to do so.

71. Defendants further violated Cpt. Hilliard's Due Process rights by interfering with the medical examination by providing false and inaccurate details to Dr. Tye, and thus substantially depriving Cpt. Hilliard of an unbiased and qualified medical examination.

72. Defendants violated Cpt. Hilliard's liberty and property Due Process rights by disclosing outdated and irrelevant information contained in his preemployment evaluations, including a confidential polygraph examination, without Cpt. Hilliard's consent.

73. Cpt. Hilliard seeks damages allowed by law including past and future lost income, medical expenses, general damages, and emotional distress damages.

74. As a result of Defendant's wrongful conduct, Cpt. Hilliard has been forced to incur the substantial costs of litigation in order to protect his rights, including reasonable attorney's fees, expert fees, and court costs in order to enforce his rights under 42 U.S.C. § 1983. Cpt. Hilliard seeks attorney fees, expert fees, and litigations costs pursuant to 42 U.S.C. § 1988.

## COUNT FOUR:

**Violation of the Idaho Human Rights Act, Idaho Code Section 67-5909 *et seq*. ("IHRA")**

75. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

76. Plaintiff alleges that he had a "disability" as defined by Idaho Code § 67-5902(15).

77. Defendants discriminated against Cpt. Hilliard when they characterized Cpt. Hilliard's use of prescription medicine as "substance abuse" or "illegal drug use."

78. Defendants discriminated against Cpt. Hilliard when they erroneously required him to submit to a medical examination that was not job-related and was not consistent with business necessity because of his actual or perceived disabilities.

79. Defendants discriminated against Cpt. Hilliard when they took adverse employment action by placing Cpt. Hilliard on "unofficial administrative leave" due to his actual or perceived disabilities.

80. Defendants discriminated against Cpt. Hilliard when they interfered with Cpt. Hilliard's "Fitness for Duty" evaluation by providing false information and allegations of substance abuse to Dr. Tye.

81. Defendants discriminated against Cpt. Hilliard because of his actual or perceived disabilities when they improperly divulged confidential information from Cpt. Hilliard's pre-employment entrance examinations, including information obtained in his pre-employment polygraph test to third-parties, including Dr. Tye.

82. Defendants discriminated against Cpt. Hilliard when they placed him on unpaid Administrative Leave, and failed to accommodate Cpt. Hilliard by allowing him to remain on light administrative duty because of his actual or perceived disabilities.

83. Defendants discriminated against Cpt. Hilliard because of his actual or perceived disabilities when they required him to submit to a GAIN substance abuse evaluation, which was not employment related or required by business necessity.

84. Defendants discriminated against Cpt. Hilliard because of his actual or perceived disabilities when they again interfered with his second "Fit for Duty" evaluation by again interfering with Dr. Tye's assessment by providing false information and making unfounded allegations of substance abuse. Defendants further discriminated against Cpt. Hilliard by relying on the medical report that they knew to be falsified, or otherwise inaccurate due to the Chief Deputy Newman's interference and tampering.

85. Defendants discriminated against Cpt. Hilliard when they terminated him on September 28, 2017 because of his actual or perceived disabilities. Cpt. Hilliard alleges that his termination was motivated by discriminatory animus towards his disabilities. Cpt. Hilliard alleges that any other reason(s) given for his termination are pretextual.

86. As a direct and proximate result of Defendants' discrimination, Cpt. Hilliard has suffered damages, including but not limited to lost salary and wages, loss of employment benefits and retirement benefits, attorney's fees, expert fees, court costs, and severe emotional distress and other non-economic damages.

### COUNT FIVE:

### Negligent Infliction of Emotional Distress ("NIED")

87. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

88. Twin Falls County and TFCSO owed Cpt. Hilliard a legal duty not to discriminate and retaliate against him for reasonable use of his prescribed medication and medical treatment.

89. Defendants breached that duty when they suspended Cpt. Hilliard, subjected him to an intrusive and unnecessary medical examination, interfered with his "Fit for Duty" evaluation, and otherwise took adverse employment action against Cpt. Hilliard. Defendants' conduct is extreme and outrageous.

90. Defendant's wrongful, retaliatory conduct directly and proximately caused severe emotional distress, which has physically manifested itself in depression, sleeplessness, loss of identity, suicidal thoughts, headaches, PTSD, loss of appetite, and other forms of physical manifestations to be proven at trial. Cpt. Hilliard has been under the treatment and supervision of a licensed medical professional in order to treat and mitigate the damages of the emotional damages caused.

91. Cpt. Hilliard is entitled to recover damages arising from this emotional distress, including medical bills, counseling bills, loss of future earning capacity, pain and suffering, and other general damages.

## COUNT SIX

### Intentional Infliction of Emotional Distress ("IIED")

92. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

93. Twin Falls County and TFCSO engaged in an intentional, deliberate, and reckless pattern of discrimination against Cpt. Hilliard. Defendants' conduct was intended to bully, harass, and disparage Cpt. Hilliard. Defendants' conduct was intended and foreseeably likely to result in causing Cpt. Hilliard severe emotional distress, anguish, and pain.

94. As a foreseeable, direct, and proximate result of Defendants' acts of intentional, reckless, extreme and outrageous conduct, Cpt. Hilliard suffered severe and pervasive psychological and emotional distress, nervousness, shock, anguish, anxiety, depression, and suicidal thoughts and tendencies. Cpt. Hilliard's damages include economic damages for medical expenses, therapy and counseling expenses, and noneconomic damages of pain and suffering in an amount to be proven at trial.

95. Cpt. Hilliard has also suffered future lost wages and loss of future earning capacity as a result of his emotional damages.

## IV.     ATTORNEY'S FEES

96. As a result of the discriminatory, unlawful and outrageous conduct of the Defendant, set forth more particularly above, the Plaintiff was required to obtain the services of an attorney to represent his interests. Plaintiff is entitled to be awarded attorney's fees, litigation expenses and costs, and expert fees pursuant to, 42 U.S.C. § 12205, 42 U.S.C. § 1988, 29 U.S.C. § 2617, Idaho Code § 12-120, and Idaho Rule of Civil Procedure 54. A reasonable attorney's fee is $400.00 per hour for Jeffrey J. Hepworth, and $175.00 per hour for J. Grady Hepworth.

## V.     DEMAND FOR TRIAL BY JURY

97. Plaintiff demands trial by jury pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. Rule 38 for all claims alleged herein.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Cpt. Brent E. Hilliard requests judgment against the Defendants as follows:

a).     For past and future lost wages and benefits in an amount to be determined at trial by jury in an amount exceeding $500,000.00.

b).     For compensatory and consequential damages, including past and future medical expenses, to be determined at trial;

c).     For noneconomic damages, including pain, suffering, and emotional distress;

d).     For reinstatement to a full-time position at the rate of pay not less than his previous hourly rate, plus benefits and job protection and/or future lost wages instead of reinstatement;

e).     For reinstatement of full fringe benefits and seniority rights;

f).     For an award for emotional distress damages, punitive and/or liquidated damages in an amount to be determined at trial;

g).     For an award of interest (both pre- and post-judgment) at the highest lawful rate pursuant to I.C. § 28-22-104 and relevant state and federal law;

h).     For an award of court costs, including expert witness fees as appropriate, and attorney fees in an amount to be determined at the rate of $400.00 per hour.

i).     For such other legal or equitable damages as this Court deems just and appropriate.

DATED this 11th day of December, 2018

                              HEPWORTH LAW OFFICES

                              By  /s/ *J. Grady Hepworth*
                                  Jeffrey J. Hepworth
                                  J. Grady Hepworth
                                  Attorneys for Plaintiff