UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| BRENT E. HILLIARD, an individual,<br><br>                Plaintiff,<br><br>       v.<br><br>TWIN FALLS COUNTY SHERIFF'S OFFICE, a Public Entity, and TWIN FALLS COUNTY, a Public Corporation,<br><br>                Defendants. | No. 1:18-cv-550 WBS<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u> |

----oo0oo----

        Before the court is defendants' Motion to Dismiss filed February 19, 2019.  (Docket No. 5.)  The court held a hearing on the motion on June 11, 2019.

I.   <u>Factual and Procedural Background</u>

        This case concerns plaintiff's claims that the Twin Falls County Sheriff's Office discriminated against him based on his disabilities.  Plaintiff was a captain with the Twin Falls

1

County Sheriff's Office with a history of positive performance evaluations and no significant disciplinary actions prior to 2017. (Compl. ¶¶ 8-9 (Docket No. 1).) In about mid-April 2017, plaintiff informed his supervisor, Chief Deputy Don Newman that he was suffering from depression; some time thereafter, plaintiff began receiving treatment from a licensed therapist. (Id. ¶ 10.) This depression was aggravated by a back injury in spring 2017, which resulted in surgery in May 2017 that prevented plaintiff from working for about one month. (Id. ¶ 11.) After the surgery, plaintiff was released by his doctors to work part-time and was given pain medication as treatment for the recovery. Plaintiff returned to work in about June 2017 and was placed on light administrative duty. (Id. ¶¶ 10-13.)

On July 8, 2017, Newman was advised that plaintiff was taking pain medication per doctor's orders. Plaintiff was then called into a meeting with Twin Falls County Sheriff Tom Carter and Newman on July 10, 2017 to discuss his use of pain medication. During the meeting, Newman explained that two officers had expressed concerns that plaintiff was under the influence of pain medication while on duty, though plaintiff explained that he was only using his medication as prescribed by his doctors. In response, Sheriff Carter requested that plaintiff go home and remain off duty until he was off all pain medication. (Id. ¶¶ 14-16.)

Within a week, around July 17, 2017, plaintiff informed Newman that he was off all pain medication and ready to return to work. Plaintiff was then called into another meeting with Sheriff Carter, Newman, and legal counsel from the county

2

attorney's office, at which he was told he was being placed on "unofficial administrative leave."  Plaintiff was also required to have a "Fitness for Duty" evaluation ("fit for duty").  (Id. ¶¶ 17-18.)

Plaintiff had a fit for duty evaluation on July 27, 2017 with Dr. Tye.[1]  During the evaluation, plaintiff informed Dr. Tye that he was no longer taking any pain medication.  At the end of the evaluation, plaintiff met with Dr. Tye and Newman, and Dr. Tye stated that he believed plaintiff was fit for duty and that returning to work would be best for his health.  (Id. at 20-21.)  Newman later called Dr. Tye and claimed that plaintiff was not entirely open during the evaluation and had a history of substance abuse.  (Id. ¶¶ 20-24.)

In Dr. Tye's August 3, 2017 written report, he found plaintiff unfit for duty and expressly relied on his conversation with Newman, including the allegations of substance abuse.  (Id. ¶ 25.)  Dr. Tye's report also made recommendations for treatment, which included continuing to meet with plaintiff's therapist and a psychiatric nurse practitioner and taking a "GAIN" substance abuse evaluation.  Plaintiff followed these recommendations. (Id. ¶¶ 26-29.)

Defendant then met with Sheriff Carter, Newman, the county attorney, and Human Resources Director Elain Molignoni on August 17, 2017.  At the meeting, defendant was given a letter informing him that he was no longer on administrative leave and would need to use vacation time and sick leave to be off work.

---

[1]   The Complaint does not give Dr. Tye's first name.

1    Defendant was also told by Molignoni to meet with his nurse

2    practitioner to fill out Family Medical Leave Act ("FMLA")

3    paperwork.  (Id. ¶ 30.)

4         Plaintiff continued to meet with his therapist and

5    nurse practitioner, who both wrote letters stating they believed

6    he was able to return to work.  Upon receiving the letter from

7    the nurse practitioner, Molignoni told plaintiff that since he

8    could return to work, there was no need to fill out FMLA

9    paperwork.  (Id. ¶¶ 31-32.)

10        On August 27, 2018, Sheriff Carter called plaintiff and

11   told him that if he passed his fit for duty evaluation the next

12   day, he would keep his job, but if he failed, he could no longer

13   be employed by the Sheriff's Office.  (Id. ¶ 33.)  After the fit

14   for duty evaluation, Dr. Tye told plaintiff that he was leaning

15   towards finding him fit for duty.  However, Dr. Tye's final

16   report dated September 6, 2017 made no recommendation.  (Id. ¶¶

17   33-35.)

18        According to plaintiff, Dr. Tye's report contained

19   numerous irregularities and erroneous factual allegations showing

20   that the Sheriff's Office interfered in Dr. Tye's evaluation.[2]

21

22        [2]   The Complaint cites two examples of erroneous factual
     allegations in Dr. Tye's report: (1) Dr. Tye's report stated that
23   plaintiff stated his pain at the time of the evaluation was "0-
     1," but questioned why plaintiff would be using Tramadol, a pain
24   medication, when in fact plaintiff told Dr. Tye he had not used
     Tramadol since July 7, 2017; and (2) the report stated that
25   plaintiff had severe depression caused by "Serotonin Syndrome"
     resulting from an adverse drug interaction between anti-
26   depressant and pain medication, when in fact he had only had one
     adverse reaction to Prozac which temporarily caused Serotonin
27   Syndrome, and his depression was not related to that episode.
     (Compl. ¶¶ 36-37.)
28

                                    4

1    Among other things, the report referenced multiple phone

2    conversations with Newman, who claimed plaintiff had a broader

3    history of substance abuse than was indicated by the GAIN

4    assessment, and Dr. Tye relied on Newman's allegations to

5    determine that plaintiff's purported substance abuse problem

6    could not be fully resolved or treated.  These allegations were

7    purportedly meritless and motivated by Newman's discriminatory

8    animus, according to plaintiff.  (Id. ¶¶ 35-40.)

9         The same day the report was released, Newman texted

10   plaintiff letting him know he was going to send Dr. Tye's report

11   to the legal department.  Plaintiff interpreted this text to mean

12   that he would be fired.  Faced with this likelihood, the next

13   day, plaintiff drank alcohol, drove to a remote location, and

14   considered committing suicide.  Plaintiff eventually reconsidered

15   his actions and began to drive home, but he was stopped and

16   arrested for driving under the influence.  (Id. ¶¶ 41-42.)

17        A few days later, plaintiff received a Notice of

18   Suspension with Pay from Newman explaining that he was being

19   investigated and would be subject to discipline because of his

20   arrest.  Plaintiff had a pre-disciplinary hearing with Newman on

21   September 26, 2017 and was officially terminated on September 28,

22   2017.  Plaintiff's appeal before Sheriff Carter was denied on

23   about October 6, 2017.  (Id. ¶¶ 43-44.)

24        As a result of plaintiff's termination and certain

25   actions taken against him prior to his termination, plaintiff

26   filed his Complaint alleging that defendants violated the

27   Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, et

28   seq., the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5909

1   et seq., the Family Medical Leave Act, 29 U.S.C. § 2615, et seq.;

2   and the Due Process Clause of the Fourteenth Amendment of the

3   U.S. Constitution.  Plaintiff also alleges that such conduct

4   constituted negligent and intentional infliction of emotional

5   distress ("NIED" and "IIED") under Idaho common law.

6   II.  Discussion

7       A.   Legal Standard

8          On a Rule 12(b)(6) motion, the inquiry before the court

9   is whether, accepting the allegations in the complaint as true

10  and drawing all reasonable inferences in the plaintiff's favor,

11  the plaintiff has stated a claim to relief that is plausible on

12  its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The

13  plausibility standard is not akin to a 'probability requirement,'

14  but it asks for more than a sheer possibility that a defendant

15  has acted unlawfully."  Id.  "A claim has facial plausibility

16  when the plaintiff pleads factual content that allows the court

17  to draw the reasonable inference that the defendant is liable for

18  the misconduct alleged."  Id.  A complaint that offers mere

19  "labels and conclusions" will not survive a motion to dismiss.

20  Id. (internal quotation marks and citations omitted).

21       B.   Defendants' Affidavits and Evidence

22          Before turning to the merits of the Motion to Dismiss,

23  the court will address defendants' attachment of affidavits and

24  exhibits to their motion.  Ordinarily courts may not consider

25  evidence outside the pleadings on a Rule 12(b)(6) motion.  Khoja

26  v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir.

27  2018).  However, courts may consider materials attached to the

28  complaint or documents the complaint necessarily relies on if

6

those documents' authenticity is not contested, under the "incorporation by reference" doctrine.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  Specifically, a complaint necessarily relies on extrinsic evidence if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  Put another way, a document will be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's complaint."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Here, defendants do not argue that plaintiff's Complaint necessarily relies on or refers to the declarations of Elaine Molignoni and Don Newman, and the court will not consider them on the motion to dismiss.  Moreover, while plaintiff's Complaint refers to plaintiff's position as captain, certain workplace rules, his DUI arrest, his fit for duty evaluations, and his termination, the Complaint does not necessarily rely on the related documents attached to it.  Most importantly, while plaintiff does not contest the authenticity of the documents attached to the motion to dismiss, evaluating the contents of these documents to assess the sufficiency of the allegations of the Complaint would likely require the court to resolve disputed factual disputes.  The court therefore declines to consider defendants' exhibits in deciding the motion to dismiss.[3]

---

[3]   Because the court declines to consider the documents attached to defendants' motion to dismiss, plaintiff's motion to

1          C.    ADA and IHRA Claims

2               Plaintiff's first and fourth claims are that defendants

3    violated the Equal Opportunity for Individuals with Disabilities

4    Act and Americans with Disabilities Act, 42 U.S.C. § 12112, et

5    seq., and the Idaho Human Rights Act, Idaho Code § 67-5909, et

6    seq.[4]  Specifically, plaintiff claims that defendants

7    discriminated against him on account of his disability when they

8    allegedly (1) characterized his use of prescription medicine as

9    substance abuse; (2) required him to submit to unnecessary

10   medical exams; (3) placed him on unofficial administrative leave;

11   (4) interfered with his fit for duty evaluations by providing

12   false information and allegations of substance abuse to Dr. Tye;

13   (5) divulged confidential information from pre-employment

14   entrance exams, including info from a polygraph test, to third

15   parties, including Dr. Tye; (6) placed him on unpaid

16   administrative leave and failed to accommodate him by allowing

17   him to remain on paid light administrative duty; (7) required him

18   to submit to a GAIN substance abuse evaluation; and (8)

19   terminated his employment.  (Compl. ¶¶ 47-57, 76-85.)

20               To state a claim for disability discrimination under

21

22   strike (Docket No. 6) is DENIED AS MOOT.

23          [4]    The parties agree that the standards for plaintiff's
     IHRA claim are equivalent to those for his ADA claim, and thus
24   the court will consider both claims together.  See McWilliams v.
     Latah Sanitation, Inc., 554 F. Supp. 2d 1165, 1178 n.3 (D. Idaho
25   2008) (noting that "[t]he Idaho Supreme Court has held that the
     IHRA will be interpreted consistently with the ADA" and
26   evaluating IHRA and ADA claims together) (citing Foster v. Shore
     Club Lodge, 908 P.2d 1228, 1232-33 (Idaho 1995); Loomis v.
27   Heritage Operating, L.P., No. CV-04-617-S-BLW, 2006 WL 2228964,
     *2 (D. Idaho Aug.3, 2006) (same)).

1  the ADA, a plaintiff must allege that he (1) has a disability;

2  (2) was qualified, meaning he was able to perform the essential

3  functions of the job; and (3) he suffered an adverse employment

4  action because of his disability.  See, e.g., Snead v. Metro.

5  Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001).

6  Defendants appear to concede that plaintiff has properly alleged

7  the first element.

8       As an initial matter, plaintiff has not sufficiently

9  alleged that his termination violated the ADA or the IHRA.  While

10 employees are protected from being fired because of their

11 disability, they still may be terminated for illegal conduct or

12 conduct that violates employee rules, as employees with

13 disabilities "are still responsible for conduct which would

14 otherwise result in their termination."  Newland v. Dalton, 81

15 F.3d 904, 906 (9th Cir. 1996) (assessing disability

16 discrimination claim brought by federal employee under the

17 Rehabilitation Act and explaining that employers may terminate

18 employees for "egregious and criminal conduct which employees are

19 responsible for regardless of any disability"); see also Fleming

20 v. Yuma Reg'l Med. Ctr., 587 F.3d 938, 939 (9th Cir. 2009)

21 (disability discrimination claims under the Rehabilitation Act

22 are governed by the same standards of the ADA); Budde v. Kane

23 Cty. Forest Preserve, 597 F.3d 860, 862 (7th Cir. 2010) (in case

24 where plaintiff was terminated after a DUI arrest, explaining

25 that "[v]iolation of a workplace rule, even if it is caused by a

26 disability, is no defense to discipline up to and including

27 termination."); Maddox v. Univ. of Tenn., 62 F.3d 843, 848 (6th

28 Cir. 1995) ("Employers . . . must be permitted to take

9

1   appropriate action with respect to an employee on account of

2   egregious or criminal conduct, regardless of whether the employee

3   is disabled.").[5]  But see Humphrey v. Memorial Hosps. Ass'n, 239

4   F.3d 1128, 1134-37 (9th Cir. 2001)(reversing grant of summary

5   judgment for employee with poor attendance caused by obsessive

6   compulsive disorder, as there was a genuine dispute of material

7   fact as to whether that disability could be accommodated by

8   allowing her to work at home).

9        Here, the court concludes that plaintiff's DUI arrest

10  was the type of criminal conduct for which a public safety

11  officer may be terminated regardless of his disability.  See

12  Newland, 81 F.3d at 906.  The court recognizes plaintiff's claim

13  that his DUI was a foreseeable and intended consequence of

14  defendants' conduct before the DUI.  Nevertheless, plaintiff

15  appears to concede that absent any discriminatory conduct by

16  defendants, his DUI arrest would be a permissible ground for his

17  termination.  Moreover, the court is unaware of any authority

18  stating that an employee may not be terminated for illegal

19  conduct that would normally be grounds for termination because

20  that illegal conduct was allegedly motivated by defendants'

21  discriminatory conduct.

22        Plaintiff's ADA and IHRA claims are not limited to his

23  termination, however.  A second basis of these claims is his

24  _____

25        [5]   Plaintiff attempts to distinguish these cases by
    arguing that they are limited to situations where an ADA
26  plaintiff's alcoholism was a disability that contributed to their
    conduct.  The court's reading of these cases is not so limited.
27  While neither side claims that plaintiff was an alcoholic, the
    court will not interpret the ADA to condone a DUI caused by
28  depression when it does not condone a DUI caused by alcoholism.

1    contention that defendants discriminated against him by

2    subjecting him to unnecessary medical examinations.  It is true

3    that under the ADA and applicable regulations, employers may

4    inquire whether their employees are able to perform job-related

5    functions and require medical examinations when consistent with

6    business necessity.  See 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. §

7    1630.14(c).  A police department also need not "forgo a fitness

8    for duty examination to wait until a perceived threat becomes

9    real or questionable behavior results in injuries."  Watson v.

10   City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999).

11          At the same time, courts have cautioned about the

12   potential for employer abuse of medical or psychological exams

13   and have explained that the ADA "prohibits employers from using

14   medical exams as a pretext to harass employees or to fish for

15   nonwork-related medical issues and the attendant unwanted

16   exposure of the employee's disability and the stigma it may

17   carry."  Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th

18   Cir. 2010) (citation and internal punctuation omitted).  Further,

19   the business necessity standard "is quite high, and is not to be

20   confused with mere expediency."  Id.  This standard looks to

21   whether there is "genuine reason to doubt whether that employee

22   can perform job-related functions."  Id. at 1146.

23          Here, plaintiff has alleged that the reasons for

24   subjecting him to fit for duty and GAIN examinations were

25   pretextual and that the Sheriff's Office did not have genuine

26   reason to doubt that he could perform his job duties.  (See

27   generally Compl. ¶¶ 9, 13-40 (alleging that plaintiff had

28   maintained positive performance evaluations, had never received

1   any prior significant disciplinary actions, had been released to

2   return to work part time, had been prescribed pain medication by

3   his doctors, had stopped using pain medication upon Sheriff

4   Carter's request, and had met Dr. Tye's treatment

5   recommendations; also alleging that Newman interfered with

6   plaintiff's fit for duty evaluations).)  Taking these allegations

7   as true, plaintiff has a plausible claim that his fit for duty

8   and GAIN evaluations violated the ADA and the IHRA.

9          For similar reasons, the court rejects defendants'

10  argument that dismissal of the ADA and IHRA claims is appropriate

11  because plaintiff could not perform the essential functions of

12  his employment.  The two main bases for defendants' argument that

13  plaintiff was unqualified is (1) he allegedly could not drive

14  safely, and (2) he failed his fit for duty examinations.

15  Plaintiff has alleged that he was in fact qualified for his

16  position, having performed his job duties successfully for

17  several years, and that he had had no major disciplinary issues,

18  at least prior to his DUI.  Plaintiff also alleged that while he

19  did take pain medication for a time, he did so in compliance with

20  doctor's orders and was able to work doing light administrative

21  duty while on that medication.  Plaintiff has also alleged that

22  (1) he was eventually medically cleared to return to full duty;

23  (2) he had stopped taking any pain medications, and (3) the fit

24  for duty examinations were tainted by improper interference by

25  Newman and others.  In light of these allegations, plaintiff's

26  failed fit for duty examinations do not necessarily render him

27

28

unqualified.[6]   Taking the allegations of the Complaint as true,
plaintiff has properly alleged he was qualified to perform the
essential functions of his job.

    In light of the forgoing, the court will grant the
motion to dismiss the ADA and IHRA claims only to the extent they
are based on plaintiff's termination.  The motion to dismiss the
ADA and IHRA claims will otherwise be denied.

    D.   FMLA Claim

    Plaintiff's next claim is for violation of the Family
Medical Leave Act.  Specifically, plaintiff claims that (1)
defendants discriminated against him by considering his use of
FMLA leave as a negative factor in the decisions to place him on
administrative leave and unpaid leave, subject him to improper
medical exams, and terminate him; (2) defendants interfered with
his FMLA rights by instructing him not to fill out necessary FMLA
paperwork, and (3) defendants interfered with his FMLA rights
when they terminated him before he could exercise his right to
medical leave.  (Compl.  ¶¶ 60-62.)  Although the Complaint is
not a model of clarity, it appears that plaintiff claims that
defendants both interfered with his FMLA rights and retaliated
against him for his exercise of FMLA rights.[7]

---

    [6]   While plaintiff's DUI may have rendered him unqualified
for his position as of the date of his DUI, the DUI is an
insufficient basis to show he was unable to drive and thus
unqualified before the DUI, in light of plaintiff's allegations
that he was qualified.

    [7]   The Complaint is also somewhat ambiguous about what
FMLA-protected activity plaintiff engaged in and what leave he
was denied, though it appears that he took medical leave for
about one month after back surgery in May 2017.  (Compl. ¶¶ 11,
13.)  Plaintiff was on various forms of leave per Sheriff

1    To allege a claim for FMLA interference, a plaintiff

2  must allege that "(1) he was eligible for the FMLA's protections,

3  (2) his employer was covered by the FMLA, (3) he was entitled to

4  leave under the FMLA, (4) he provided sufficient notice of his

5  intent to take leave, and (5) his employer denied him FMLA

6  benefits to which he was entitled."  Escriba v. Foster Poultry

7  Farms, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014).  To state a

8  claim for FMLA retaliation, a plaintiff must allege (1) he

9  engaged in statutorily protected activity; (2) he suffered an

10  adverse employment action, and (3) a causal connection between

11  the protected activity and the adverse employment action.  See,

12  e.g., Morgan v. Hilti, Inc., 108 F.3d 1319, 1325 (10th Cir.

13  1997).

14    The parties appear to agree that plaintiff was entitled

15  to take leave under the FMLA but dispute whether he has properly

16  alleged that (1) he provided sufficient notice of his intent to

17  take FMLA leave, (2) he was denied FMLA benefits, and (3) he

18  suffered any harm from defendants' actions.  The parties also

19  dispute whether the Complaint properly alleges a causal

20  connection between any adverse employment action and any

21  protected FMLA activity.

22    Here, the Complaint does not sufficiently alleges that

23  plaintiff gave notice of his intent to take leave or that he was

24  denied FMLA benefits.  An employee need only give his employer

25  notice of his intent "to take leave for a reason that would

26

27  Carter's and Newman's orders in July through September 2017,
   though no party characterizes any of that leave as official FMLA
28  leave.  (See Compl. ¶¶ 15-43).

1    qualify under the FMLA." Escriba, 743 F.3d at 1243.  However,

2    the Complaint alleges only (1) when plaintiff met with Molignoni

3    and others on August 17, 2017, he was informed that he would need

4    to use vacation time and sick leave to be off work and that he

5    would need to meet with his nurse practitioner to fill out FMLA

6    paperwork, and (2) when plaintiff forwarded to Molignoni letters

7    from his medical professionals saying he was able to return to

8    work, she informed him that there was no need to fill out the

9    FMLA paperwork.  (Compl. ¶¶ 30-32.)  In essence, the Complaint

10   merely alleges that plaintiff was given the option to request

11   FMLA leave and he did not do so because his medical professionals

12   thought such leave was unnecessary, and the HR director relied on

13   the medical professionals' opinion in stating that FMLA paperwork

14   was unnecessary because he was medically cleared to return to

15   work.  Such allegations do not sufficiently allege that plaintiff

16   gave notice of his intent to take FMLA leave.

17        Similarly, the Complaint has no allegation that

18   plaintiff was denied FMLA benefits.  Indeed, much of the

19   Complaint recounts plaintiff's efforts to return to work in the

20   face of his supervisors' insistence that he remain off duty and

21   on leave until he showed that he was fit for duty.  Plaintiff

22   points to Sheriff Carter's alleged statement that he would be

23   fired if he did not pass his second fit for duty examination, and

24   contends that his position with the Sheriff's Office should have

25   been protected while he was on leave.  (Opp'n 15 (citing Compl. ¶

26   33).)  However, this threat is too vague to constitute a denial

27   of FMLA leave, at least where plaintiff never notified defendants

28   of his intent to take leave.  Accordingly, the court will dismiss

15

1   plaintiff's FMLA interference claim.

2          The court will also dismiss plaintiff's FMLA
3   retaliation claim to the extent it is based on his termination.
4   Plaintiff offers vague allegations that defendants considered his
5   use of FMLA in terminating him, and that they terminated him
6   before he could exercise his right to medical leave. (Compl. ¶¶
7   61-62.)  These allegations are insufficient in light of the fact
8   that once plaintiff was arrested for his DUI, defendants were
9   permitted to terminate him.  Plaintiff may not use the FMLA as a
10  shield to prevent termination on account of his illegal conduct.
11  See Lacayo v. Donahoe, Case No. 14-cv-4077-JSC, 2015 WL 993448,
12  *13 (N.D. Cal. Mar. 4, 2015) (claim that denial of FMLA leave
13  caused plaintiff's conduct which led to DUI "does not fall within
14  the FMLA's purview").

15         On the other hand, plaintiff has sufficiently alleged
16  that defendants improperly considered his use of medical leave as
17  a factor in improperly subjecting him to medical exams, placing
18  him on unofficial administrative leave, and in suspending him.
19  The evidence may ultimately show that defendants were justified
20  in taking these actions.  However, taking plaintiff's allegations
21  as true, and assuming these are adverse employment actions,
22  plaintiff has stated a claim for FMLA retaliation based on these
23  other actions.

24         In light of the foregoing, the court will dismiss the
25  FMLA claim to the extent it is based on defendants' alleged
26  interference with his FMLA rights and his termination, but will
27  deny the motion to dismiss the FMLA claim in all other respects.
28         E.   Due Process Claim

1    Plaintiff's third claim is for violation of the

2  Fourteenth Amendment of the U.S. Constitution under 42 U.S.C. §

3  1983.  Specifically, the Complaint alleges that plaintiff's due

4  process rights were violated by being subjected to invasive and

5  unnecessary medical exams, by defendants' interference with those

6  exams, and by the disclosure of outdated and irrelevant

7  information without his consent during the evaluation.  (Compl.

8  ¶¶ 65-72.)  A plaintiff may not recover under § 1983 claim for

9  the deprivation of rights guaranteed by the ADA, if the only

10 alleged deprivation of rights is the employee's rights under the

11 ADA.  See, e.g., Holbrook v. City of Alpharetta, 112 F.3d 1522,

12 1531 (11th Cir. 1997).  However, some courts have allowed § 1983

13 claims based on due process violations even though the same

14 alleged conduct may also violate the ADA.  See, e.g., Gardner v.

15 City of Berkeley, 838 F. Supp. 2d 910, 927 (N.D. Cal. 2012);

16 Martinez v. City of Maywood, No. CV 09-06734 SJO (RCx), 2009 WL

17 10670099, *3 (C.D. Cal. Dec. 21, 2009).[8]

18    Plaintiff now concedes that defendants' decisions to

19 subject him to fit for duty examinations and the GAIN substance

20 abuse examination may be recoverable under the ADA but not under

21 § 1983.  (See Opp'n 16.) However, plaintiff contends that he may

22 still maintain a § 1983 claim based on defendants' alleged

23

24    [8]    The case law makes clear that a plaintiff must properly
25 allege a protected liberty or property interest to establish a
   due process claim.  See, e.g., Gardner, 838 F. Supp. 2d at 927;
26 Johnson v. Bd. of Tr. of Boundary Cty. Sch. Dist. No. 101, No.
   CV-09-61-N-BLW, 2010 WL 530070, *5 (D. Idaho Feb. 9, 2010).  The
27 court assumes, without deciding, that plaintiff has properly
   alleged the requisite liberty or property interest in support of
28 his § 1983 claim.

interference with these examinations, including providing false information, which he claims is a due process violation separate from his ADA claims.  (Opp'n 16-18.)

The court agrees.  Plaintiff's § 1983 claim is based on the violation of his due process rights, not the ADA, and "[t]o conduct a hearing where there is even a 'probability' that the decision-maker will unfairly decide any issue violates due process requirements."  See Johnson, 2010 WL 530070, at *6 (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)).  Taking the Complaint's allegations as true, plaintiff has alleged that his fit for duty examinations were conducted and decided unfairly due to improper interference and false information provided by Newman and others, and these tainted examinations were used as a basis to suspend him and threaten his termination.  Accordingly, the court will deny the motion to dismiss the § 1983 claim based on the alleged violation of plaintiff's due process rights under the Fourteenth Amendment.

F.   Negligent Inflicition of Emotional Distress

Plaintiff's first common law claim is for negligent inflicition of emotional distress under Idaho law.  Specifically, plaintiff contends that defendants owed him a duty not to discriminate or retaliate against him for his reasonable use of prescription medication and medical treatment, and that they breached that duty when they suspended him, subjected him to his fit for duty evaluation, interfered with that evaluation, and "otherwise took adverse employment action" against him.  (Compl. ¶¶ 88-91.)

To state a claim for NIED under Idaho law, plaintiff

must allege the same elements as any common law tort, with one
additional element.  Specifically, plaintiff must allege (1)
defendants had a duty, (2) plaintiff breached that duty, (3) a
causal connection between the breach and plaintiff's harm, and
(4) some physical manifestation of the emotional distress.
Johnson v. McPhee, 147 Idaho 455, 455 (Ct. App. 2009).

Defendants argue for the first time in their reply
brief that under Idaho law, plaintiffs cannot assert claims for
negligence infliction of emotional distress in the employment
context.  (Reply 9.)  At least two opinions issued by judges in
the District of Idaho have held that NIED claims may not be
brought in the employment context.  See White v. Twin Falls Cty.,
No. 1:14-cv-102 EJL REB, 2016 WL 1275594, *7 (D. Idaho March 31,
2016); Feltman v. Petco Animal Supplies, Inc., No. 2:11-cv-414
EJL MHW, 2012 WL 1189913, *5-6 (D. Idaho March 20, 2012).

However, the Idaho Supreme Court has explained that
"Idaho recognizes the tort of negligent infliction of emotional
distress where the employer owes the employee a legal duty."
Hatheway v. Bd. of Regents of Univ. of Idaho, 155 Idaho 255, 270
(Idaho 2013); see also Frogley v. Meridian Joint Union Sch. Dist.
No. 2, 155 Idaho 558, 569-70 (Idaho 2013) (reversing summary
judgment for employer on NIED claim where employee claimed
harassment and retaliation); Bollinger v. Fall River Rural Elec.
Co-op, Inc., 152 Idaho 632, 643 (Idaho 2012) (NIED claim was not
preempted by Idaho's workers compensation law because workers'
compensation covers injuries caused by accidents, and plaintiff's
injury was caused by emotional distress unrelated to any physical
injury).  In light of Hatheway and other Idaho cases recognizing

NIED claims in the employment context, the court declines to follow White and Feltman and will proceed to the merits of the NIED claim.

Defendants' main argument regarding the NIED claim is that plaintiff has not properly alleged a violation of any duty, in light of their prior arguments that plaintiff has not properly alleged an ADA or FMLA violation.  The court has already rejected those arguments, at least in part, though, and plaintiff has also alleged a violation of his due process rights, meaning that plaintiff has identified multiple statutory duties that defendants allegedly violated.[9]  Accordingly, the court will deny the motion to dismiss the NIED claim to the extent it is based on failure to allege defendants' breach of any duty.

G.  Intentional Infliction of Emotional Distress

Plaintiff's last claim is for intentional infliction of emotional distress under Idaho common law.  Specifically, plaintiff contends that defendants engaged an intentional or

---

[9]  The Idaho Supreme Court has explained that the IHRA "creates certain duties for employers, the violation of which could form the basis of a negligent infliction of emotional distress claim." Hatheway, 155 Idaho at 270.  This court accordingly assumes that the ADA, the FMLA, and the Fourteenth Amendment also create duties for employers, the violation of which could form the basis of an NIED claim.  See Nation v. State, Dept. of Corr., 144 Idaho 177, 190 (Idaho 2007) (setting forth elements under which statutes and administrative regulations may define the applicable standard of care for a negligence claim).  This court also assumes, without deciding, that plaintiff has properly alleged the violation of common law duties, the violation of which could form the basis of an NIED claim.  See id. at 190-91 (explaining that "[e]very person has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others" and setting forth elements under which a specific duty may be imposed by Idaho common law) (citation and internal punctuation omitted).

reckless pattern of discrimination against him which was intended to harass and cause severe emotional distress.  (Compl. ¶¶ 93-94.)

To state a claim for IIED under Idaho law, plaintiff must allege (1) intentional or reckless conduct, (2) which is extreme and outrageous, (3) a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress is severe.  Edmondson v. Shearer Lumber Prods., 139 Idaho 172, 179 (Idaho 2003).  The conduct must be "very extreme" conduct that is "atrocious" and "beyond all possible bounds of decency," not just conduct that is unjustifiable or in violation of a statutory prohibition.  Id. at 180; Ward v. Sorrento Lactalis, Inc., 392 F. Supp. 2d 1187, 1195 (D. Idaho 2005).  Absent any other allegations, firing an employee because of a disability has been found insufficient to constitute extreme and outrageous conduct.  See Ward, 392 F. Supp. 2d at 1195.

Here, in light of plaintiff's DUI arrest, defendants' termination of plaintiff does not rise to the level of outrageous conduct required for an IIED claim.  Terminating a public safety officer for a drunk driving arrest is not atrocious and beyond all possible bounds of decency, even if defendants' actions helped lead to that illegal conduct.  In contrast, the Complaint's allegations that defendants intentionally interfered with his fit for duty examinations and made false accusations against him, while knowing that plaintiff was in a vulnerable state due to his depression and/or PTSD, are sufficient to survive a motion to dismiss on the issue of whether such conduct

may constitute outrageous conduct.  Accordingly, the court will dismiss the IIED claim to the extent it is based on plaintiff's termination.  The court will otherwise deny the motion to dismiss the IIED claim.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 5) be, and the same hereby is, GRANTED IN PART.  The Complaint's ADA, IHRA, FMLA, and IIED claims are DISMISSED to the extent they are based on plaintiff's termination.  The Complaint's FMLA claim is also DISMISSED to the extent it is based on interference with his rights under the FMLA.  The Motion is otherwise denied.  Plaintiff has twenty days from the date this Order is signed to file an amended complaint, if he can do so consistent with this Order.

IT IS FURTHER ORDERED that plaintiff's request to strike defendants' affidavits and extrinsic evidence (Docket No. 6) is DENIED AS MOOT.

Dated:  June 20, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

22