UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENT E. HILLIARD, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>TWIN FALLS COUINTY SHERIFF'S OFFICE, a Public Entity, and TWIN FALLS COUNTY, a Public Corporation,<br><br>                    Defendants. | Case No. 1:18-cv-00550-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff Brent E. Hilliard's motion for partial summary judgment, Defendants Twin Falls County Sheriff's Office and Twin Falls County's motion for summary judgment, and related motions to strike filed by both parties. (Dkts. 36, 43-2, 45, 48, 50.) The motions are fully briefed and at issue. The Court conducted a video hearing on December 14, 2020. After careful consideration of the record; the parties' briefing, supporting materials, and oral argument; and the relevant legal authorities, the Court will deny Plaintiff's motion for partial summary judgment and will grant in part and deny in part Defendants' motion for summary judgment. The motions to strike will be denied.

## FACTUAL BACKGROUND

This case concerns Hilliard's claims that Defendants discriminated against him and violated his due process rights by wrongfully refusing to allow him to return to work as a Twin Falls County Sheriff's Office Captain following a back surgery.

Hilliard began working at the Twin Falls County Sheriff's Office on October 21, 1996, and advanced to the rank of Captain in 2010. In mid-April 2017, Hilliard alleges he informed his supervisor, Chief Deputy Don Newman, that he was battling depression related to events witnessed over the course of his career. (Dkt. 13 at ¶ 10.) Hilliard began receiving treatment for depression while continuing to work in his position as Captain.

On May 9, 2017, Hilliard underwent back surgery and was off work for approximately one month. The parties dispute precisely when Hilliard returned to work following his surgery. (Dkt. 40-1 at ¶¶ 3, 5); (Dkt. 48-1 at ¶¶ 7-8.) Hilliard argues he returned to work on June 7, 2017. (Dkt. 36-4 at ¶ 6.) Defendants contend Hilliard attempted to return to work in "late May 2017" but was sent home until he obtained a release from his doctor. (Dkt. 45-2 at ¶ 7.) It is undisputed, however, that on June 7, 2017, Hilliard's doctor released him to return to work "with restrictions of no bending, lifting, or twisting and activity as tolerated." (Dkt. 36-2, Ex. 2.) Hilliard was placed on light duty work to accommodate his restrictions.

In June and July 2017, a number of Twin Falls County Sheriff's Office employees reported to Newman and to Twin Falls County Sheriff Tom Carter that Hilliard appeared to be impaired while at work. On June 6, 2017, Carter met with certain employees to discuss these reports. The parties dispute the purpose of the meeting. (Dkt. 36-4 at ¶ 8)

MEMORANDUM DECISION AND ORDER - 2

(Hilliard asserts, that during the meeting, Carter told Newman and the other Captains to be on the lookout for Hilliard appearing to be under the influence on the job.); (Dkt. 40-1 at 8) (Defendants contend the meeting followed a regular weekly staff meeting and was held for the purpose of discussing reports that Hilliard appeared impaired at work.)

On June 8, 2017, Newman inquired of Hilliard about the reports that Hilliard was impaired at work. (Dkt. 45-2 at ¶ 10); (Dkt. 48-1 at ¶ 10.) Hilliard told Newman that he had taken a valium earlier that morning for muscle cramps that may have caused Hilliard to appear "groggy." (Dkt. 48-1 at ¶ 10.)

On July 10, 2017, Hilliard met with Carter and Newman who conveyed to Hilliard that other employees had expressed concerns that Hilliard was impaired while on duty. (Dkt. 40-1 at ¶ 9); (Dkt. 45-2 at ¶ 11); (Dkt. 48-1 at ¶ 11.) Hilliard informed Carter and Newman that he was taking oxycodone while off work and Tramadol in the mornings before coming to work to help with pain, as prescribed by his doctor. (Dkt. 36-4 at ¶ 4); (Dkt. 45-2 at ¶ 10); (Dkt. 48-1 at ¶¶ 10-11, 17.) Carter requested that Hilliard go home until he was no longer taking medication. (Dkt. 36-4 at ¶ 9); (Dkt. 40-1 at ¶ 9); (Dkt. 48-1 at ¶ 17.)

Approximately one week later, Hilliard alleges he notified Newman that he was "off all pain medications and ready to return to work." (Dkt. 13 at ¶ 17); (Dkt. 48-1 at ¶¶ 13, 22.) On July 20, 2017, Hilliard met with Carter, Newman, and Elaine Molignoni, the Twin Falls County Human Resources Director. At the meeting, Hilliard was placed on paid administrative leave and asked to submit to a fitness for duty evaluation. (Dkt. 13 at ¶ 18); (Dkt. 45-2 at ¶ 14); (Dkt. 48-1 at ¶¶ 13, 14.)

MEMORANDUM DECISION AND ORDER - 3

The fitness for duty evaluation was performed by Dr. Ronald B. Tye, Psy.D., on July 27, 2017. At the conclusion of the evaluation, Dr. Tye met with Hilliard and Newman. During that meeting, Dr. Tye indicated his initial impression was that Hilliard could return to work. (Dkt. 36-4 at ¶¶ 16, 17); (Dkt. 40-1 at ¶ 16.) Shortly thereafter, but before Dr. Tye issued his final report, Newman communicated separately with Dr. Tye. The parties dispute the content and purpose of Newman's communications with Dr. Tye. (Dkt. 36-4 at ¶ 18); (Dkt. 40-1 at ¶¶ 17, 18); (Dkt. 41-2, Dec. Newman, Ex. V.)

Hilliard alleges Newman's statements to Dr. Tye "falsely accused" Hilliard of having a history of substance abuse and improperly interfered with Dr. Tye's evaluation. (Dkt. 13 at ¶¶ 24-25); (Dkt. 36-4 at ¶¶ 18-20.) Defendants maintain Newman made no allegation of substance abuse and, instead, accurately relayed to Dr. Tye the concerns that Hilliard had been impaired in the workplace. (Dkt. 40-1 at ¶¶ 17-18.)

On August 3, 2017, Dr. Tye issued his report finding Hilliard "unfit for duty" and set forth treatment recommendations that would allow Hilliard to return to work. (Dkt. 36-2, Aff. Hilliard, Ex. 5); (Dkt. 41-2, Dec. Newman, Ex. W.) Hilliard alleges Dr. Tye changed his final assessment based on Newman's false allegations of substance abuse. (Dkt. 13 at ¶ 25); (Dkt. 36-4 at ¶ 20.) Defendants dispute that allegation. (Dkt. 40-1 at ¶¶ 17-18.) Regardless, Hilliard began following Dr. Tye's treatment recommendations.

On August 17, 2017, Hilliard attended another meeting with Carter, Newman, and Molignoni. During the meeting, Hilliard was given a letter, dated August 9, 2017, stating his paid administrative leave was ending and that he was not authorized to return to work at that time. It also notified Hilliard of his rights under the Family Medical Leave Act

(FMLA) to pursue treatment as suggested by Dr. Tye and complete another fitness for duty evaluation. (Dkt. 13 at ¶ 30); (Dkt. 36-2, Aff. Hilliard, Ex. 4); (Dkt. 45-2 at ¶ 27.)

Hilliard argues he substantially complied with Dr. Tye's treatment recommendations by attending sessions with treatment providers and obtaining a Global Appraisal of Individual Needs (GAIN) evaluation. (Dkt. 13 at ¶ 27-32); (Dkt. 36-4 at ¶¶ 22-24); (Dkt. 36-2, Aff. Hilliard, Ex. 9.) A second fitness for duty evaluation was scheduled for August 28, 2017.

On August 27, 2017, Hilliard contends Carter telephoned him and informed Hilliard that if he passed the final fitness for duty evaluation, Hilliard "would still have a job," but if Hilliard was found unfit for duty, "he could no longer be employed" with the Twin Falls County Sheriff's Office. (Dkt. 13 at ¶ 33); (Dkt. 36-4 at ¶ 24.) The following day, Hilliard participated in the second fitness for duty evaluation. At the conclusion of the evaluation, Hilliard alleges Dr. Tye again indicated he was "leaning" towards finding Hilliard fit for duty. (Dkt. 13 at ¶ 34.)

Dr. Tye's final report dated September 7, 2017, however, made no determination regarding Hilliard's fitness for duty. (Dkt. 36-4 at ¶ 27); (Dkt. 41-2, Dec. Newman, Ex. Y.) Dr. Tye's final report assessed Hilliard's progress with the recommendations made in the August 3, 2017 fitness for duty evaluation, concluding: "[w]ithout complete disclosure, obviously a suspected substance abuse problem cannot be fully resolved or treated." (Dkt. 41-2, Dec. Newman, Ex. Y.)

Newman notified Hilliard by text that Dr. Tye's report had been received and was being sent to the Twin Falls County legal department. (Dkt. 13 at ¶ 42); (Dkt. 36-4 at

¶ 28.) Hilliard interpreted the text to mean his employment with the Twin Falls County Sheriff's Office would be terminated.

The day after receiving Newman's text, Hilliard consumed alcohol, drove to a remote location, and contemplated suicide. Hilliard reconsidered his actions and began driving home when he was arrested for driving under the influence. (Dkt. 13 at ¶¶ 41-42.) Hilliard was terminated from his employment on September 28, 2017 as a result of the arrest. Hilliard's appeal of his termination was denied on October 6, 2017.

## PROCEDURAL BACKGROUND

On October 30, 2017, Hilliard filed a Notice of Tort Claim and a Complaint with both the Idaho Human Rights Commission and Equal Employment Opportunity Commission. Hilliard received his Notice of Right to Sue on December 5, 2018, and initiated this action on December 11, 2018. (Dkt. 1.) Defendants filed a motion to dismiss which was granted in part and denied in part on June 20, 2019. (Dkt. 12.)[1]

On July 10, 2019, Hilliard filed an Amended Complaint asserting six causes of action: 1) violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*; 2) violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615 *et seq.*; 3) violation of Due Process, 42 U.S.C. § 1983; 4) violation of the Idaho Human Rights Act

---

[1] The case was assigned to Senior United States District Judge William B. Shubb who decided the motion to dismiss. (Dkt. 12.) The parties later consented and the case was reassigned to the undersigned for all purposes. (Dkt. 22.)

(IHRA), Idaho Code § 67-5909, *et seq.*; 5) negligent infliction of emotional distress; and 6) intentional infliction of emotional distress. (Dkt. 13.)

Hilliard filed a motion for partial summary judgment on June 24, 2020, seeking summary judgment regarding Defendants' "liability for violation of Hilliard's constitutional rights and discrimination that occurred prior to September 7, 2017." (Dkt. 36.) On August 14, 2020, Defendants filed a motion for summary judgment on all of Hilliard's claims. (Dkt. 45.) Both parties filed related motions to strike. (Dkts. 43-2, 48, 50.) For the reasons that follow, the Court finds genuine issues of material fact preclude summary judgment on Hilliard's claims of: 1) violation of the ADA, 2) violation of the IHRA, and 3) negligent infliction of emotional distress.[2] Summary judgment will be granted on the claims of: 1) violation of due process pursuant to 42 U.S.C. Section 1983 and 2) intentional infliction of emotional distress. The motions to strike will be denied.

## STANDARD OF LAW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[2] Hilliard voluntarily dismissed his FMLA claim. (Dkt. 48 at 13.)

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When cross-motions for summary judgment are filed, the Court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating these motions, a court "must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## ANALYSIS

### Motions to Strike [3]

**1.**      **Plaintiff's Motions to Strike**

Hilliard seeks to strike all evidence submitted in the Declaration of Chief Deputy

Don Newman (Dkt. 41) and the Declaration of Pam S. Howland (Dkt. 42) that did not

exist prior to September 7, 2017, or is otherwise inadmissible. (Dkt. 43-2.) Hillard argues

evidence that was not available to Defendants at the time of the alleged adverse

employment actions is not relevant to resolving Plaintiff's motion for partial summary

judgment on the issue of liability. (Dkt. 43-2.)

Specifically, Hilliard moves to strike the reports from Fabrice Czarnecki, M.D.,

David Corey, Ph.D., ABPP, and Victor McCraw that are attached to the Declaration of

Pam Howland. (Dkt. 43-2 at 3) (citing Dkt. 42-2, Dec. Howland, Exs. I, J, K.)[4] Hilliard

further argues the reports of Dr. Czarnecki and Dr. Corey, Defendants' retained experts,

are inadmissible under Rule 702 because they are not based on sufficient facts or data, are

not helpful to the trier of fact, and constitute hearsay under Rule 802.

---

[3] The Court's rulings on the respective motions to strike stated herein are limited to consideration of the evidence for purposes of the pending summary judgment motions. The Court makes no determination regarding the admissibility of any evidence at trial.

[4] Hilliard also moves to strike Plaintiff's discovery responses dated May 28, 2020 and certain Crosspointe Family Services records attached to the Howland Declaration. (Dkt. 43-2) (citing Dkt. 42-2, Dec. Howland, Exs. L, N.) The Court did not rely on these materials in ruling on the summary judgment motions and, therefore, Hilliard's motion to strike is denied as moot as to Exhibits L and N attached to the Howland Declaration.

While expert reports themselves are inadmissible at trial, expert opinions offered after the employment decision may be considered relevant to whether an employer's determination that a direct threat existed was objectively reasonable. *Echazabal v. Chevron USA, Inc.*, 336 F.3d 1023, 1033 (9th Cir. 2003). Hilliard's arguments to the contrary go to the weight of the evidence which is a matter for the jury to decide at trial. On the present motions, Defendants have raised genuine issues of material fact as to whether they met their burden to establish this affirmative defense.

Hilliard also moves to strike the third-party statements regarding Hilliard's alleged substance abuse under Rules 402, 701, and 802 of the Federal Rules of Evidence. (Dkts. 43-2, 47.) Specifically, he objects to Paragraphs 16-24 in Newman's Declaration and Exhibits O-U attached thereto. (Dkt. 43-2) (citing Dkt. 41, Dec. Newman at ¶¶ 16-24 and Exs. O-U.)) These materials concern the reports made by other employees that Hilliard was impaired in the workplace. Hilliard contends the materials are not admissible to establish Defendants' affirmative defense because they are "after-acquired evidence" and are not the kind of scientific, medical, or objective evidence required to make the individualized assessment needed to substantiate the Defendants' affirmative defense. (Dkt. 47 at 2-3.) The Court disagrees.

The employee reports are directly relevant to Defendants' affirmative defense. Fed. R. Evid. 402. Hilliard does not dispute that employees reported concerns about Hilliard's behavior and performance at work to Newman. (Dkt. 48-1 at ¶ 9.) Instead, Hillard attacks whether the employee reports are sufficient to prove the affirmative defense. Again, Hilliard's arguments go to the weight of the evidence, not the

admissibility. While the written reports themselves may not be admissible, the third-party statements in the employee reports, or portions thereof, may be admissible depending on how they are offered. *See e.g.* Fed. R. Evid. 801(c)(2) (For instance, if not offered for the truth of the matter asserted but instead to show what actions, if any, Defendants took as a result of the reports.); Fed. R. Evid. 701 (As lay opinion testimony rationally based on the witnesses' personal observations and knowledge.). Whether Defendants can meet their burden to prove the affirmative defense, and therefore are not liable, remains to be seen. On the present motions, however, genuine issues of material fact are in dispute and must be resolved at trial. *Echazabal*, 336 F.3d at 1027. For these reasons, the Court will deny Hilliard's motion to strike the third-party statements.

Last, Hilliard moves to strike the declaration testimony of Dan Thom filed in support of Defendants' motion for summary judgment. (Dkt. 48 at 5.) Hilliard argues Thom's Declaration proffers undisclosed and improper expert testimony. In response, Defendants maintain Thom's Declaration is that of a fact witness based on his first-hand observations made during the time in question. (Dkt. 49 at 7.)

The declaration at issue sets forth Thom's relationship with Hilliard, Thom's work experience, and Thom's personal observations of Hilliard in the workplace in June and July 2017. (Dkt. 45-4, Dec. Thom.) Thom was a certified drug recognition expert in 2017, the time period relevant here.[5] However, Thom's personal observations and

---

[5] Thom's certification expired in November 2019. (Dkt. 48-3, Supp. Dec. Thom at ¶ 2.)

knowledge are lay, fact-based declarations, not expert testimony. Thom may testify as a lay witness as to what he personally observed and has knowledge of. Fed. R. Evid. 602. Thom may also offer lay opinion testimony to the extent it is 1) rationally based on his perception; 2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and 3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. Thom's experience as a certified drug recognition expert goes to the weight of his testimony.

Thom's Declaration conveys his own observations of Hilliard in the workplace in June and July 2017, his belief that Hilliard was under the influence of possible pain medication, and his statements to Newman regarding the same, are proper lay testimony akin to the reports from the other employees. The same is true of the Supplemental Declaration of Thom filed by Hilliard. (Dkt. 48-3, Supp. Dec. Thom.) The competing declarations of Thom filed by the parties are indicative of the material issues in dispute in this case. For these reasons, the Court will deny Hilliard's motion to strike Thom's Declaration.

## 2.      Defendants' Motion to Strike

Defendants move to strike the declaration and exclude expert testimony of Robert Swotinsky, M.D. (Dkt. 50.) Defendants argue Dr. Swotinsky's Declaration is untimely and improper expert rebuttal testimony, and inadmissible under Rule 702, Rule 703, and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Hilliard maintains Dr. Swotinsky's report was timely submitted, is proper rebuttal, and satisfies Rule 702, Rule 703, and *Daubert*. (Dkt. 51.)

Dr. Swotinsky's Declaration was filed in response to Defendants' motion for summary judgment. (Dkt. 48-2, Dec. Swotinsky.) For purposes of summary judgment, the Court finds Dr. Swotinsky's declaration is appropriate rebuttal to the declarations of the defense experts on the disputed issues presented with the affirmative defense. Defendants' arguments challenging the relevance and reliability of Dr. Swotinsky's Declaration go to the weight of the evidence. Fed. R. Evid. 702, 703. Accordingly, the Court will deny Defendants' motion to strike Dr. Swotinsky's Declaration.

**Cross Motions for Summary Judgment**

**1.      Discrimination in Violation of ADA (42 U.S.C. § 12112 *et seq.*)**[6]

The Americans with Disabilities Act ("ADA") prohibits a covered entity from "discriminat[ing] against a qualified individual on the basis of disability in regard to [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must first demonstrate that he or she: 1) is disabled within the meaning of the ADA; 2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and 3) suffered an adverse employment action because of the disability. *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012);

---

[6] Hilliard's discrimination claims are brought pursuant to the ADA and the IHRA. *See* Idaho Code § 67–5909. Because the same standards apply to discrimination claims under both federal and Idaho law, the Court will reference only federal law in the sections below. *Harris*, 132 F.Supp.3d at 1236 n. 2 (citing *Bowles v. Keating*, 606 P.2d 458, 462 (Idaho 1979) (adopting the standards promulgated in federal discrimination cases for purposes of analyzing claims brought under the IHRA)).

MEMORANDUM DECISION AND ORDER - 13

*EEOC v. MJC, Inc.*, 306 F.Supp.3d 1204, 1221 (D. Haw. 2018); *Harris v. Treasure Canyon Calcium Co.*, 132 F.Supp.3d 1228, 1236 (D. Idaho 2015).

### A.      Disability

To qualify as being disabled within the meaning of the ADA, plaintiff must show that he or she has a mental or physical impairment that substantially limits one or more major life activities, has record of such impairment, or is regarded as having such impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, the Amended Complaint alleges Defendants discriminated against Hilliard by characterizing Hilliard's use of prescription medicine as substance abuse or illegal drug use. (Dkt. 13 at ¶ 49); (Dkt. 36 at 14.)[7]

### 1.      Administrative Exhaustion

Defendants argue Hilliard's regarded as discrimination claim was not exhausted in the administrative proceedings and not properly plead. (Dkts. 40, 45.) Hilliard maintains he exhausted all administrative remedies and that the claim is sufficiently plead. (Dkt. 43 at 10.)

The Court finds Hilliard exhausted his administrative remedies by sufficiently raising the regarded as disabled claim in the complaint filed with the Idaho Human Rights

---

[7] The Amended Complaint also alleges discrimination based on Hilliard's diagnoses of depression, PTSD, and mood disorders as a disability. (Dkt. 13 at ¶ 48.) The parties mention but do not fully flesh out the ADA claim with regard to Hilliard's mental diagnoses. Accordingly, the Court will not address that portion of the ADA claim.

Commission (IHRC) and adequately plead the claim in the Amended Complaint filed in this matter. The core factual allegations giving rise to the discrimination claim in the IHRC complaint are the same as those raised in the Amended Complaint. Namely, that Defendants confronted Hilliard regarding concerns that Hilliard was under the influence of pain medications while on duty; required Hilliard to remain off duty until he was "off all pain medication"; required fitness for duty evaluations before Hilliard would be allowed to return to work; and interfered with the evaluations by making false accusations to Dr. Tye that Hilliard had a history of substance abuse. (Dkt. 42-1, Dec. Howland, Ex. A at 9-18); (Dkt. 13 at ¶ 49.) The Court finds these facts adequately raised the regarded as disabled claim in the administrative proceedings and are sufficient to satisfy the pleading standard for stating a claim of discrimination under the ADA in this matter.

## 2.     A Genuine Dispute Exists as to Whether Defendants Regarded Hilliard As Disabled

Defendants argue the ADA claim fails as a matter of law, because Defendants did not regard Hilliard as having a disability. (Dkt. 40.) Defendants assert they did not believe Hilliard was engaged in the illegal use of drugs nor did Defendants perceive Hilliard as having a substance use disability. Instead, Defendants maintain they referred Hilliard to the fitness for duty evaluations because they objectively believed Hilliard was impaired while in the workplace and could not perform his job duties with that impairment. For the reasons that follow, however, the Court finds genuine issues of material fact exist as to whether Defendants regarded Hilliard as disabled.

MEMORANDUM DECISION AND ORDER - 15

Defendants acknowledge the fitness for duty evaluations were ordered, at least in part, because of concerns that Hilliard was under the influence of some unknown substance and impaired while at work. (Dkt. 40-1 at ¶ 13.) The August 3, 2017 fitness for duty evaluation itself states the reason for evaluation was to "[e]valuate for possible substance abuse/dependency." (Dkt. 36-2, Aff. Hilliard, Ex. 5 at 36.)

Further, Plaintiff has identified facts upon which a reasonable jury could conclude that Defendants regarded Hilliard's use of prescription medications as a disability. For example, Carter and Newman confronted Hilliard with reports that he appeared to be impaired at work and placed Hilliard on administrative leave because of concerns that Hilliard appeared to be under the influence of something; Carter requested that Hilliard submit to fitness for duty evaluations, at least in part, for suspected substance abuse; and Newman suspected Hilliard had a substance abuse problem. (Dkt. 36-4 at ¶¶ 8-11, 13-14, 17.)

## B.    Qualified Individual

A "qualified individual" is an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Hilliard bears the burden of proving he was qualified. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1086 (9th Cir. 2006); *Hutton v. Elf Atochem North America, Inc.*, 273 F.3d 884, 892 (9th Cir. 2001).

The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires." 42 U.S.C. § 12111(8). It does not "include the marginal functions of the position." 29 C.F.R. §

MEMORANDUM DECISION AND ORDER - 16

1630.2(n)(1). A job function may be considered "essential" for various reasons. *See id.* § 1630.2(n)(2)(i)—(iii). The statute provides that "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3) (requiring consideration of the amount of time spent performing the function).

The essential functions of a Twin Falls County Sheriff's Captain include: supervising and reviewing activities of assigned personnel and subordinates; managing budget and resource needs; and exercising independent judgment, initiative, and decisions subject to state and county laws, rules, regulations, and policies. (Dkt. 41-2, Dec. Newman, Ex. M); (Dkt. 36-2, Dec. Hilliard, Ex. 1.) The principal duties are performed in an office work environment or in jail facilities with some field work as required. *Id.*

Defendants argue Hilliard was not a qualified individual under the ADA, because he could not perform the essential functions of his job as Captain at the Twin Falls County Sheriff's Office. Namely, the supervisory, critical thinking, and decision making responsibilities of the position and the ability to drive and use a firearm, even on light duty. (Dkt. 40 at 6-9.) Hilliard maintains he was a qualified individual and able to perform the essential duties of his position as Captain on light duty which, Hilliard argues, were "purely administrative" and "supervisory." (Dkt. 43 at 8.) On this element of proof, the Court finds genuine issues of material fact are in dispute concerning whether

Hilliard was a qualified individual able to perform the essential functions of his position as Captain, while on light duty.

Defendants rely on reports from several employees that Hilliard appeared to be impaired while at work in June and July 2017. *See e.g.* (Dkt. 41, Dec. Newman at ¶ 15) (Newman met with Hilliard on June 8, 2017 after receiving numerous reports that Hilliard was impaired and inquired about his use of medication.); (Dkt. 41, Dec. Newman at ¶¶ 9, 14, 16-24, 26) (Newman received "numerous" complaints about Hilliard's behavior at work and concerns he was impaired in June and July 2017.).

Hilliard, on the other hand, points out that Dr. Tye found Hilliard's "ability to focus and concentrate were within normal limits" and that his intelligence was in the average range. (Dkt. 36-2, Aff. Hilliard, Ex. 5 at 38.) Further, both Carter and Newman testified that Hilliard appeared "lucid" and unimpaired during their meeting on July 10, 2017, when Hilliard was placed on administrative leave. (Dkt. 36-3, Aff. Hepworth, Ex. C, Dep. Carter at 150:4-7 and Ex. D, Dep. Newman at 106:9-11); (Dkt. 41, Dec. Newman at ¶ 25.)

Hilliard argues other evidence in the record establishes that Hilliard was able to perform the essential functions of the position, such as records from his treating health care providers who released Hilliard to return to work and found Hillard to be "stable," and the GAIN assessment that concluded Hilliard presented "no risk for withdraw from alcohol or other drugs." (Dkt. 36 at 16); (Dkt. 36-2, Aff. Hilliard, Ex. 9); (Dkt. 36-4 at ¶¶ 22-24); (Dkt. 48 at 11-12.) Hilliard further represents that he was qualified to drive

MEMORANDUM DECISION AND ORDER - 18

and carry a firearm at all times. (Dkt. 43 at 7-8) (noting Newman acknowledged in his deposition that he knew Hilliard drove himself to and from work.)

While Defendants contest Hilliard's reliance on Dr. Tye's report, the findings of his treating providers, and the GAIN evaluation, on this motion, the Court finds Hilliard has identified evidence sufficient to give rise to a genuine dispute of material fact. Whether a jury finds that the evidence proves Hillard was able to perform the essential functions of the job is a factual determination that must be made at trial.

### C.    Adverse Employment Action and the Affirmative Defense

Hilliard alleges he suffered several adverse employment actions, including: having to submit to multiple medical evaluations; being placed on "unofficial" and "unpaid" administrative leave without reasonable accommodations; being denied unbiased and impartial fitness for duty evaluations because of Defendants' interference; and, having his confidential medical information disclosed. (Dkt. 13 at ¶¶ 50-58.)

Defendants contend Hilliard has failed to show any adverse employment action was taken against him, because Defendants acted in accordance with Twin Falls County's policies and the ADA. (Dkt. 49 at 5.) Moreover, Defendants assert they have proven their affirmative defense to the ADA claim by establishing the fitness for duty evaluations were job-related and consistent with business necessity because Hilliard posed a direct threat to the health and safety of others in the workplace. (Dkt. 40 at 9-13); (Dkt. 45 at 10-15.) Hilliard disputes both contentions, arguing Defendants violated the County's drug testing policy and failed to establish their affirmative defense. (Dkt. 36 at 16-18); (Dkt. 43 at 8.)

MEMORANDUM DECISION AND ORDER - 19

Hilliard maintains there is no admissible evidence that he was impaired at work or posed a direct threat. Moreover, Hilliard argues Defendants failed to make an individualized assessment of his ability to perform the essential functions of the job based on reasonable medical judgment and objective evidence, *before* excluding him from employment. (Dkt. 43 at 9.)

The parties present diverging positions concerning the affirmative defense. However, both parties rely on *Echazabal v. Chevron USA, Inc.*, 336 F.3d 1023 (9th Cir. 2003). (Dkt. 43 at 9); (Dkt. 45 at 10.) *Echazabal* succinctly sets forth the legal standard for the affirmative defense as follows:

> An employer can defend against a disability discrimination claim under the ADA by relying on a qualification standard that "is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6). Such a qualification standard "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). The statute further provides that "[t]he term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Because it is an affirmative defense, the burden of establishing a direct threat lies with the employer. *Hutton v. Elf Atochem N. Am. Inc.*, 273 F.3d 884, 893 (9th Cir.2001); *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir.1999).
>
> Before excluding an individual from employment as a direct threat, an employer must demonstrate that it has made an "individualized assessment" of the employee's ability to perform the essential functions of the job, "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r). The factors to be considered include: "(1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm."2 Id. The Supreme Court emphasized the requirement of a "particularized enquiry into the harms the employee would probably face." *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2020).

MEMORANDUM DECISION AND ORDER - 20

*Echazabal*, 336 F.3d at 1027. Defendants focus on the first portion of the standard, arguing they have established that the fitness for duty evaluations were "job-related" and "consistent with business necessity." (Dkt. 40 at 9); (Dkt. 45 at 10-12.) Hilliard, on the other hand, emphasizes the second portion of the standard, asserting Defendants failed to make an individualized assessment based on "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence" before excluding Hilliard from employment as a direct threat. (Dkt. 43 at 9.)

The parties' disagreement quibbles over the semantics of establishing the affirmative defense. Regardless of the sequencing, to prevail on the affirmative defense, Defendants must prove both that: 1) the qualification standard requiring that an employee not pose a direct threat is job-related and consistent with business necessity; and 2) that they made an appropriate individualize assessment of the employee's ability to perform the essential functions of the job. *See Echazabal*, 336 F.3d at 1027.[8] The Court finds there are several disputed facts that preclude summary judgment on these issues.

Defendants rely in large part on the employee reports and concerns about Hilliard's behavior in the workplace in June and July 2017, as evidence that Hilliard failed to meet the minimum job related qualification standards, even on light duty, and

---

[8] The Court is aware of Plaintiff's position that Defendants were required to conduct an appropriate individualized assessment before taking adverse employment action against Hilliard. (Dkt. 43 at 8-10); (Dkt. 48 at 1-3.) That contention involves resolution of genuine issues of material fact which the jury must decide at trial.

that he posed a direct threat to the safety of others. (Dkt. 40 at 9); (Dkt. 45 at 11-12.) Defendants argue the essential functions of the position of Captain, even on light duty, demands critical thinking and other law enforcement related duties that Hilliard was unable to perform. They argue that the results of the fitness for duty evaluations further support Defendants' contention that Hilliard was unable to perform the essential functions of the job and posed a direct threat. (Dkt. 45 at 14.)

Hilliard counters that the subjective and biased lay opinions of other employees relied upon by Defendants fail to satisfy Defendants' burden of showing Hilliard posed a direct threat sufficient to establish the affirmative defense. (Dkt. 48 at 2-3.) Hilliard challenges that the fitness for duty evaluations were "a sham," had nothing to do with the actual functions of the job, and, regardless, were unreliable because of Newman's interference and his false allegations of prior substance abuse by Hilliard. (Dkt. 36 at 16-18); (Dkt. 43 at 8.) If Defendants suspected substance abuse or work impairment due to drug use, Hilliard contends, Defendants were required to order a drug test pursuant to the Twin Falls County Sheriff's Office policies.

Moreover, Hilliard argues the objective evidence established that Hilliard was fit for duty; namely, the GAIN Assessment and work records from his treatment providers. (Dkt. 36-4 at ¶¶ 22-25); (Dkt. 36-2, Aff. Hilliard at ¶¶ 31-33 and Ex. 9); (Dkt. 43 at 9.) Hilliard maintains Defendants refused to allow him to return to work despite the fact that he had substantially complied with Dr. Tye's treatment recommendations. Hilliard also disputes Defendants' contentions regarding the essential functions of the job, arguing the position was mostly administrative, particularly on light duty. In sum, Hilliard maintains

MEMORANDUM DECISION AND ORDER - 22

there is no admissible evidence showing he was unable to perform the essential function of the job or posed a direct threat.

On the present record, the Court finds there are genuine issues of material fact on this issue. Such as, whether Defendants followed County policies, whether Newman interfered with or tainted the fitness for duty evaluations, and whether Hilliard in fact was impaired and could perform the essential functions of his position. There is evidence from which a reasonable jury could find Defendants possessed sufficient information to conclude Hilliard posed a direct threat. Likewise, a reasonable jury could conclude Defendants failed to make an appropriate individualized assessment of Hilliard's ability to perform the essential functions of the job. The Court will, therefore, deny both motions for summary judgment on the ADA and IHRA claims.

## 2.      Violation of Due Process (42 U.S.C. § 1983)

Plaintiff's Section 1983 claim alleges Defendants violated his Fourteenth Amendment due process rights. (Dkt. 13 at ¶¶ 65-72.)   The Fourteenth Amendment to the Constitution of the United States protects against the deprivation of property or liberty without due process. *Brady v. Gebbie*, 859 F.2d 1543, 1547 (9th Cir. 1988). A Section 1983 claim based upon the deprivation of procedural due process has three elements: 1) a liberty or property interest protected by the Constitution; 2) deprivation of the interest by

the government; and 3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).[9]

"While local governments may be sued under [Section] 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *see Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) ("[A municipality] cannot be held liable ... on a respondeat superior theory.") To prevail on a municipal liability claim under Section 1983, a plaintiff must show that a municipal custom or policy caused the violation of plaintiff's constitutional rights. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a municipality is a "person" subject to damages liability under section 1983 when it causes a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers").

"[M]unicipalities may be liable under [Section] 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell*, 436

---

[9] On the present motions, Hilliard argues he had a "substantive" right to an objective, reliable drug test before being subjected to any adverse employment action. (Dkt. 36 at 3-7); (Dkt. 48 at 10.) However, no substantive due process right was plead in the Amended Complaint. (Dkt. 13.) Regardless, Hilliard has not established the existence of any substantive due process right as claimed. Nor would any such substantive due process right change the outcome here given the Court's ruling concerning municipal liability. The Court therefore addresses only the procedural due process claim. Hilliard's arguments regarding whether Defendants complied with County policies may be relevant to other claims or defenses, however.

MEMORANDUM DECISION AND ORDER - 24

U.S. at 694). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff must also "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link" between the municipal policy or custom and the deprivation of federal rights. *Id*.

Here, Defendants argue Hilliard has failed to identify any County policy or custom that caused or motivated the alleged deprivation of Hilliard's rights. (Dkt. 40 at 4); (Dkt. 45 at 5-6.) The Court agrees.

Municipal liability under Section 1983 attaches where an official policy, a pervasive practice or custom, or a decision or act by a final policymaker *caused* the alleged constitutional injury. *Monell*, 436 U.S. at 690. Here, Hilliard has not pointed to any County policy or custom that caused his alleged injury. Noticeably absent from the Amended Complaint is any mention of the County's policies, save one general allegation stating Carter requested that Hilliard "go home and remain off duty until he was off all pain medication, in contravention to Cpt. Hilliard's doctors' advice, TFCSO employment policies, and the ADA." (Dkt. 13 at ¶ 16.)

Plaintiff's claim under 42 U.S.C. Section 1983 itself is based on the actions of "Defendants," namely Carter and Newman, as the cause of Hilliard's alleged constitutional injuries. (Dkt. 13 at ¶¶ 2-4, 64-74.) A municipality cannot, however, "be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.

MEMORANDUM DECISION AND ORDER - 25

Hilliard contends that, because Carter and Newman had final policy and decision making authority, their decisions and conduct in how they dealt with Hilliard became the official policy or custom of the County and the Sheriff's Office. (Dkt. 43 at 5-6.) However, the fact that Carter and Newman may have been policymakers of the County does not establish municipal liability where, as here, Hilliard alleges Defendants failed to follow the County's written policies. That is to say, Hilliard's claim alleges Defendants - Carter and Newman - violated his due process rights by *failing to follow* the County's policies when they neglected to obtain a drug test pursuant to County policies before subjecting Hilliard to adverse employment action. (Dkt. 36 at 3-7.) Indeed, Hilliard asserts he had a "substantive right" to be drug tested under the County's policies. Hilliard's alleged constitutional injuries, therefore, were not *caused* by a County policy or decision, but arose instead from Defendants' failure to adhere to the County's policies.

The cases cited by Hilliard in support of his argument are factually distinguishable. (Dkt. 43 at 5-6.) In *Hollist v. Madison County*, the court concluded that *Monell* liability may attach to a single decision of a municipal official if that officer is a final policymaker, in which case the officer's decision becomes the policy. *Hollist*, No. 4:13-cv-00139-BLW, 2015 WL 733985, at *5 (D. Idaho Feb. 19, 2015). The county in *Hollist*, however, did not have a written policy that applied to the employment circumstance at issue. Under those facts, the court concluded that the county sheriff's course of action in handling the employment situation - for which there was no written policy - became the policy of the county. Here, there is no absence of a policy. Again,

MEMORANDUM DECISION AND ORDER - 26

Hilliard's claim is that Defendants violated his rights by failing to follow the County's
written policies.

In *Denning v. Lincoln County Sheriff's Office*, the court held that the county
"cannot escape liability by arguing that it was simply complying with state law."
*Denning*, No. 1:18-cv-00473-BLW, 2020 WL 355209, at *12 (D. Idaho Jan. 21, 2020).
That is to say, where the alleged unconstitutional act complained of implements or
executes a decision officially adopted by the municipalities' officers, the municipality is
not immune from a Section 1983 suit under *Monell*. *Id.*; *see also Evers v. Custer County*,
745 F.2d 1196, 1203 (9th Cir. 1984). Again, the actions that Hilliard alleges violated his
due process rights were actions taken "in violation" of county policy, not actions that
were caused by any County policy or decisions that became County policy. (Dkt. 36 at 3,
9.)

For these reasons, the Court finds Hilliard has failed to point to any policy or
custom of the County that motivated or caused the alleged constitutional violations.
Therefore, Defendants' motion for summary judgment will be granted on the
Section 1983 claim.

**3.     Negligent Infliction of Emotional Distress**

"The elements of negligent infliction of emotional distress [NIED] are 1) a legal
duty recognized by law; 2) a breach of that duty; 3) a causal connection between the
defendant's conduct and the plaintiff's injury; and 4) actual loss or damage." *Berian v.
Berberian*, No. 47122, 2020 WL 6387153, at * 12 (Idaho Nov. 2, 2020) (quoting *Frogley
v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013)). "Additionally, there

must be a physical manifestation of the plaintiff's emotional injury, which is designed to provide a degree of genuineness that claims of mental harm are not imagined." *Id.* (citing *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 775 P.2d 640, 646 (Idaho 1989)).

Here, Hilliard has identified facts sufficient to show a genuine issue for trial on the NIED claim to the extent he alleges a legal duty arising under the ADA or IHRA. The Amended Complaint alleges Defendants owed Hilliard a legal duty to not discriminate against him for his use of his prescribed medication and medical treatment. (Dkt. 13 at ¶ 89.) "Idaho recognizes the tort of [NIED] where the employer owes the employee a legal duty." *See Hatheway v. Board of Regents of Univ. of Idaho*, 310 P.3d 315, 330 (Idaho 2013)). A legal duty is one recognized by law that requires the defendant to conform to a certain standard of conduct. *Id.*, 158 P.3d at 965.

The ADA and IHRA both impose legal duties on employers, "the violation of which could form the basis of a [NIED] claim." *Id.* Therefore, Hilliard's NIED claim may proceed to the extent it is tethered to legal duties arising from the ADA and IHRA. However, because Hilliard's Section 1983 claim will be dismissed, the NIED claim cannot be based on a legal duty arising from the due process clause. To the extent there is any duplication of damages among the claims going forward, double recovery will not be allowed.[10]

---

[10] The parties disagree concerning the potential damages. (Dkts. 48, 49.) The Court will instruct the jury on damages at trial.

4.      **Intentional Infliction of Emotional Distress**

"In order to establish a claim of intentional infliction of emotional distress, the plaintiff must prove that: 1) the defendant's conduct was intentional or reckless; 2) the defendant's conduct was extreme and outrageous; 3) there was a causal connection between the defendant's wrongful conduct and the plaintiff's emotional distress; and 4) the emotional distress was severe." *Berian*, 2020 WL 6387153, at * 11 (quoting *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2016)). "Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." *Id.* (quoting *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 741 (Idaho 2003)).

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable [minds] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Berian*, 2020 WL 6387153, at *11 (quoting *Edmondson*, 75 P.3d at 741) (quoting Restatement (Second) of Torts § 46 cmt. h (1965))). "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Id*. at *11-12.

Here, the Amended Complaint alleges Defendants' engaged in an intentional, deliberate, and reckless pattern of discrimination against Hilliard; the conduct was extreme and outrageous, and intended to bully, harass, and disparage Hilliard; and, the

MEMORANDUM DECISION AND ORDER - 29

conduct was foreseeably likely to cause and did cause Hilliard severe emotional distress, anguish, and pain in the form of severe and pervasive psychological and emotional distress, nervousness, shock, anguish, anxiety, depression, and suicidal thoughts and tendencies. (Dkt. 13 at ¶¶ 95-98.)

While the Court appreciates the impact the circumstances and events giving rise to this lawsuit had on Hilliard, the conduct of Defendants that Hilliard complains of is not sufficiently extreme and outrageous for the intentional infliction of emotional distress claim to survive summary judgment. That is to say, Hilliard has not identified facts sufficient to show a genuine issue for trial on this claim.

Hilliard argues Defendants engaged in systemic and pervasive discrimination and attack on Hilliard's character and qualifications by spreading false allegations of substance abuse and dishonesty. (Dt. 48 at 15.) Hilliard relies on much of the same evidence discussed above concerning the ADA claim; namely, Carter and Newman's statements to other employees, decision to require the fitness for duty evaluations, and refusal to allow Hilliard to return to work; and Newman's communications to Dr. Tye. (Dkt. 48 at 15-18.) Hilliard also alleges Defendants deliberately chose to violate their own written policies and standards. (Dkt. 48 at 15.) However, violation of the ADA or county policies alone does not satisfy the extreme and outrageous element of the claim. *See Ward v. Sorrento Lactalis, Inc.*, 392 F. Supp.2d 1187, 1195 (D. Idaho 2005). Even assuming Defendants' actions were unreasonable or unjustified, that is insufficient to establish the extreme conduct required for a claim of intentional infliction of emotional distress. Hilliard's reliance on caselaw discussing the recovery of damages for emotional

MEMORANDUM DECISION AND ORDER - 30

distress in the context of a stigma-plus claim is of no consequence in light of the Court's determination above that Hilliard's Section 1983 due process claim should be dismissed. (Dkt. 48 at 15.)

Because Hilliard has failed to point to any evidence constituting the "extremely bad behavior" of Defendants required to sustain a claim for intentional infliction of emotional distress, the Court will grant Defendants' motion for summary judgment on this claim.

**5.     Twin Falls County Sheriff's Office as a Party**

Defendants argue the Twin Falls County Sheriff's Office is not a necessary or proper party to this action and should be dismissed pursuant to Federal Rule of Civil Procedure 21. (Dkt. 45 at 4.) Hilliard maintains the Twin Falls County Sheriff's Office is a proper defendant and liable for the alleged adverse actions in dispute. (Dkt. 48 at 7.)

Rule 21 provides that the Court may, "on just terms, add or drop a party" and also "sever any claim against a party." Fed. R. Civ. P. 21. The parties' arguments primarily address the Section 1983 claim which the Court has dismissed as a matter of law. Hilliard's surviving claims are the ADA, IHRA, and NIED claims.

As to the "non-tort claims" - the ADA and IHRA claims – Defendants contend the Sheriff's Office should be dismissed as a party because it is duplicative of, or one in the same as, the County. (Dkt. 45 at 5) (The "real party in interest is Twin Falls County," not the Sheriff's Office and any damages awarded would "flow from the County."). Plaintiff maintains the Sheriff's Office is a proper defendant and, regardless, that the Sheriff's

Office and the County are "alter-egos" of one another and the distinction between the two has no bearing on the outcome of this litigation. (Dkt. 43); (Dkt. 48 at 7.)

As to the NIED tort claim, the parties disagree concerning whether the Twin Falls County Sheriff's Office is a political subdivision under the Idaho Tort Claims Act (ITCA), Idaho Code § 6-609(2). (Dkt. 45 at 5); (Dkt. 48 at 9.) Courts in this District have concluded that sheriff's offices are not political subdivisions as that term is defined under Idaho law and, therefore, are not subject to suit for tort liability. *Swenson v. County of Kootenai*, No. 2:13-cv-0026-EJL, 2014 WL 1247801, at *3 (D. Idaho Mar. 25, 2014) (citing Idaho Code § 6-902(2)); *Williams v. Madison County, Idaho*, No. 4:12-cv-00561-EJL-CWD, 2014 WL 6473284, at *6 (D. Idaho Nov. 18, 2014). Hilliard argues to the contrary based on the statutory language of the ITCA. (Dkt. 48 at 7, 9-10.)

The Court will reserve ruling on this issue at this time. While it appears the two entities may be duplicative, the many genuine issues of material fact that presently exist make it difficult to conclude that the Sheriff's Office should be dismissed as a party. Indeed, both parties rely on the employment policies of Twin Falls County as well as the Twin Falls County Sheriff's Office to support their competing arguments in the present motions. (Dkts. 36, 43); (Dkt. 36-2, Dec. Hilliard, Ex. 6, Drug and Alcohol Policy for Twin Falls County); (Dkt. 40, 45); (Dkt. 40-1 at ¶ 30); (Dkt. 41-2, Dec. Newman, Exs. I-L, Twin Falls County Policies and Twin Falls County Sheriff's Office Policies.) For these reasons, the Court finds it appropriate to retain the Twin Falls County Sheriff's Office as a party for now. If the case proceeds to trial, the Court may entertain a renewed motion to dismiss the Twin Falls County Sheriff's Office if appropriate.

MEMORANDUM DECISION AND ORDER - 32

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Plaintiff's Motion for Partial Summary Judgment (Dkt. 36) is **DENIED**.

2)     Defendants' Motion for Summary Judgment (Dkt. 45) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to Plaintiff's claims made pursuant to 42 U.S.C. Section 1983, the Family Medical Leave Act, and the tort of Intentional Infliction of Emotional Distress. The Motion is denied as to Plaintiff's claims made pursuant to the Americans with Disabilities Act and the Idaho Human Rights Act, as well as the negligent infliction of emotional distress claim.

3)     Plaintiff's Motions to Strike (Dkts. 43-2, 48) and Defendants' Motion to Strike (Dkt. 50) are **DENIED**.

4)     A telephonic scheduling conference is set for **Tuesday, February 2, 2021 at 10:00 a.m.** for purposes of setting the trial date and related deadlines. All parties shall use the Court's AT&T teleconferencing line to connect to this hearing, by dialing: 1-888-273-3658, Access Code: 5475731, Security Code: 5637. Prior to this hearing, the Court encourages the parties to confer regarding how long each side anticipates the trial will take to complete and potential trial dates.

DATED: January 15, 2021

Honorable Candy W. Dale
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 33