UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENT E. HILLIARD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TWIN FALLS COUNTY SHERIFF'S OFFICE, a Public Entity, and TWIN FALLS COUNTY, a Public Corporation,<br><br>Defendants. | Case No. 1:18-cv-00550-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Presently before the Court are four post-trial motions filed by Defendants after the jury returned its verdict and the Court entered judgment in this matter: Motion for Judgment as a Matter of Law After Trial, Motion for New Trial or to Alter or Amend Judgment, Motion to Set Aside Judgment or Amend Findings or Grant New Trial, and Motion for Relief from Judgment. (Dkts. 163-166.) Also pending are Plaintiff's Motion for Attorney Fees and Supplemental Motion for Taxation of Costs. (Dkts. 151, 152.) The motions are fully briefed and at issue.

The Court conducted a hearing on August 29, 2022, on a limited number of issues raised in Defendants' post-trial motions. (Dkt. 196.) For the reasons that follow, the Court will grant Defendants' Motion for New Trial and Motion for Relief from Judgment. Consequently, the remaining motions are moot.

**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL AND PROCEDURAL BACKGROUND

Brent E. Hilliard filed this action against his former employer, Twin Falls County Sheriff's Office and Twin Falls County, alleging disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. Section 12112(a), and the Idaho Human Rights Act (IHRA), Idaho Code Section 67-5909, et seq.; and negligent infliction of emotional distress.[1] Plaintiff alleged Defendants discriminated against him by wrongfully refusing to allow him to return to work as a Twin Falls County Sheriff's Office Captain following a back surgery.

An eleven-day jury trial was held in this matter and, after deliberation, the jury returned a verdict in favor of Hilliard on November 18, 2021. (Dkt. 142.) Judgment was entered on the special verdict returned by the Jury on November 23, 2021. (Dkt. 143.)

On December 3, 2021, the Court issued findings of fact and conclusions of law on the issue of back pay under the ADA that was submitted to the jury for an advisory verdict. (Dkt. 153.) On the same day, an Amended Judgment was entered pursuant to Rule 58(a) of the Federal Rules of Civil Procedure. (Dkt. 154.)

Also on December 3, 2021, Plaintiff filed a bill of costs, a supplemental motion for taxation of costs, and a motion for attorney fees. (Dkts. 150-152.) On January 3, 2022, Defendants timely filed their four post-trial motions. (Dkt. 160, 163-166.) Relevant here, Defendants move for a new trial, or to alter or amend the judgment pursuant to Federal

---

[1] Because the issues, evidence, witnesses, and related particulars of the case are all well known to the parties and the Court, they will not be recited in full here.

**MEMORANDUM DECISION AND ORDER - 2**

Rule of Civil Procedure 59(a)(1)(A) and (e), and for relief from judgment under Rule 60(b)(3), based on alleged misconduct by opposing counsel. (Dkt. 163, 166.) Plaintiff opposes the motions in all respects. (Dkt. 185, 188.)

## LEGAL STANDARDS

1.   **Rule 59**

Federal Rule of Civil Procedure 59(a)(1)(A) permits the Court to order a new trial "on all or some of the issues, and to any party…, after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court…." Fed. R. Civ. P. 59(a)(1)(A). "The authority to grant a new trial… is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In ruling on a motion for new trial, the Court has the right and the duty to "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Air–Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 190 (9th Cir. 1989) (citations and quotation marks omitted); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). However, a court may not upset the verdict "merely because it might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quotation marks and citation omitted).

While Rule 59 does not specify the grounds upon which a new trial may be granted, "[h]istorically recognized grounds include, but are not limited to, claims 'that the verdict is against the [clear] weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski*, 481 F.3d at

729 (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Court may grant a new trial where "the verdict…is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)). Further, the Court may grant a new trial where an attorney's misconduct sufficiently permeates the trial such that the Court is convinced that the jury reached its verdict under the influence of passion or prejudice. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1984)); *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995).

"Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Hemmings*, 285 F.3d at 1192 (9th Cir. 2002) (quoting *Kehr*, 736 F.2d at 1286); *see also Anheuser-Busch*, 69 F.3d 346. In evaluating any possible prejudice from attorney conduct, the Court considers "the totality of the circumstances including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and verdict itself." *Hemmings*, 285 F.3d at 1193 (citation omitted).

Where "'offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of trial,' [courts] are less inclined to find the statements pervaded the trial and thus prejudiced the jury." *Settlegoode v. Portland Public Schs.*, 371 F.3d 503, 518 (9th Cir. 2004) (quoting *Kehr*, 736 F.2d at

1286); *see also Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991). However, "a combination of improper remarks" may demonstrate prejudicial impact. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3rd Cir. 1992) (discussing *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3d Cir. 1978)). "[T]he trial court is in a superior position to gauge the prejudicial impact of counsel's conduct during the trial." *Anheuser-Busch*, 69 F.3d at 346; *see also McIntosh v. Northern Cal. Universal Enterprises, Inc.*, 2010 WL 2698747 at *12 (E.D. Cal. 2010) ("Great deference is given to the trial judge to gauge prejudicial effect of attorney misconduct.").

Federal courts "erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial." *Hemmings*, 285 F.3d at 1193 (quoting *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986)). The court reviews for "plain or fundamental error, absent a contemporaneous objection…, where the integrity or fundamental fairness of the proceedings in the trial court is called into serious doubt." *Id*. (quoting *Bird v. Glacier Electric Coop., Inc*., 255 F.3d 1136, 1148 (9th Cir. 2001)). The plain error standard of review requires: (1) an error; (2) the error is plain or obvious; (3) the error was prejudicial or effects substantial rights; and (4) review is necessary to prevent a miscarriage of justice. *Id*. (citing *Smith v. Kmart Corp*., 177 F.3d 19, 25 (1st Cir. 1999)).

"The rationale for this high threshold is two-fold. First, raising an objection after the closing argument and before the jury begins deliberations permits the judge to examine the alleged prejudice and to admonish…counsel or issue a curative instruction, if warranted," and "[t]he second rationale stems from courts' concern that allowing a

MEMORANDUM DECISION AND ORDER - 5

party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error." *Hemmings*, 285 F.3d at 1193 (citation omitted); *see also Settlegoode*, 371 F.3d at 517.

Under Rule 59(e), a court may alter, amend, or reconsider its previous judgment, including a grant of summary judgment. Fed. R. Civ. P. 59(e). Relief under Rule 59(e) is appropriate when the Court: "(1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in the controlling law." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "A Rule 59(e) motion may not be used to raise arguments ... for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

## 2.     Rule 60

Rule 60(b)(3) provides for relief from a final judgment, order, or proceeding due to fraud, misrepresentation, or misconduct by an opposing party. *See* Fed. R. Civ. P. 60(b)(3). To prevail on a Rule 60(b)(3) motion, Defendants "must prove by clear and convincing evidence that the verdict [or judgment] was obtained through fraud,

misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (quoting *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)). Rule 60(b)(3) relief requires that the misconduct "'not be discoverable by due diligence before or during the proceedings.'" *Id.* at 1260 (quoting *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)).

The merits of a case are not before the Court on a Rule 60(b) motion. *Casey*, 362 F.3d at 1261. Rather, Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *De Saracho*, 206 F.3d at 880 (citing *In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir. 1987)).

## DISCUSSION

Defendants argue a new trial or relief from judgment is warranted under Federal Rules of Civil Procedure 59 and 60, based on: 1) newly discovered evidence that inaccurate testimony was given by Justine Sweet during trial and knowingly relied upon by Plaintiff's counsel during closing argument; and 2) improper comments made by counsel during Plaintiff's closing argument. (Dkts. 163, 166.)[2] Plaintiff opposes the motions, arguing the testimony presented and counsel's closing argument were proper.

---

[2] Defendants' briefing asserts other arguments and bases for the relief requested in their motions. This Memorandum Decision and Order will address the issues raised that are the most concerning to the Court and the issue that is dispositive of the motions only.

**MEMORANDUM DECISION AND ORDER - 7**

(Dkts. 188, 185.)

**1.      Testimony of Justine Sweet**

Defendants contend new evidence discovered following trial shows a key witness for Plaintiff, Justine Sweet, gave inaccurate testimony regarding the compensation she received for her testimony, which Plaintiff's counsel failed to correct and knowingly relied upon during his closing argument. (Dkts. 164, 166, 191.) Plaintiff maintains Sweet testified truthfully, and argues that all compensation paid to Sweet was "customary" and "not material" to the substance of her testimony at the time of trial. (Dkt. 188 at 15-18.)

Having carefully reviewed the trial transcript, the parties' arguments and submissions, and the entire record, the Court finds a new trial and relief from judgment are necessary to prevent a serious miscarriage of justice. The integrity of the judicial process and the legitimacy of the jury's verdict were severely compromised by the circumstances surrounding payments made to Sweet, both before and most specifically after trial; Sweet's testimony of the amount she was paid for her appearance on the day of trial; the failure of Plaintiff's counsel to clarify Sweet's testimony and to fully disclose the payment already made and the compensation he intended to make to Sweet for testifying at trial; and the closing argument by Plaintiff's counsel knowingly misrepresenting the full extent of the compensation paid and promised to be paid to Sweet.

Sweet was called by Plaintiff as a non-retained expert to testify concerning the GAIN-I assessment she administered to Hilliard in 2017.[3] During cross examination, Sweet was asked "Are you being paid for your testimony today," to which Sweet succinctly responded "$40." (Dkt. 174 at 1017.)

During closing argument, Plaintiff's counsel highlighted the fact that Sweet appeared to testify at trial for only $40, in contrast to other witnesses who he described as "high-paid hired gun[s]":

> And he [Hilliard] ended up with Justine Sweet, who he had never met before that. And Justine Sweet testified, and I was incredibly impressed with Justine Sweet. She just finished a 12-hour stint at her place of employment where she deals with drug addicts and very mentally disturbed people. She worked all night, 12 hours, and then showed up to court here for $40.
>
> She wasn't – wasn't a high-paid hired gun. She was a nice lady. And she was qualified. She had had a lot of training. She almost had her Ph.D. She had her master's. She was just a little bit away from her Ph.D. in counseling. And she had done a lot of substance abuse evaluations. And she was very familiar with the GAIN test. The GAIN test, which is a certified by the State of Idaho as a qualified substance abuse assessment tool.
>
> And she literally sat down next to Brent and asked him questions for two hours and put the information in herself on the computer and generated a report. And there's nothing, nothing to suggest Brent Hilliard has a substance abuse problem.

(Dkt. 180 at 2718.)

---

[3] "GAIN-I assessment," aka Global Appraisal of Individual Needs, is a series of psychological instruments used to assist with clinical diagnosis, placement, and treatment.

Following trial, Defendants learned Plaintiff's counsel had tendered a check in the amount of $91.50 to Sweet with a subpoena prior to her appearance at trial, had "promised" Sweet prior to trial that she would be paid a reasonable fee for her time, and had issued a second check for $500 to Sweet the day after the trial concluded purportedly for the time Sweet spent preparing to testify and her time testifying at trial. (Dkts. 150, 164, 166, 191, 192.)

On the present motions, Defendants assert Plaintiff's counsel improperly used Sweet's inaccurate testimony that she was being paid just $40, by knowingly and intentionally misrepresenting the full extent of the compensation to Sweet during closing argument, to unfairly influence the jury's impression of the evidence. They further contend this prejudiced Defendants and materially affected the outcome of the trial. (Dkt. 164 at 9-12); (Dkt. 166 at 5-6); (Dkt. 192 at 3-5.) Plaintiff's response maintains that: Sweet's testimony was truthful and accurate; the comments made during closing argument did not misrepresent the compensation Sweet had received at that point in time; and, no deception by Plaintiff's counsel occurred as evidenced by the post-trial disclosure of all payments made to Sweet. (Dkts. 185, 188.)

This allegation of misconduct that became known only after trial was the most concerning to the Court upon first review of the Defendants' post-trial motions. In response, none of Plaintiff's counsel's explanations alleviated that concern and, unfortunately, requires the extraordinary relief of setting aside the jury's verdict, and granting of a new trial and relief from judgment. As explained below, the Court did not reach this conclusion lightly.

**MEMORANDUM DECISION AND ORDER - 10**

The Court has given a great deal of consideration to all of Defendants' motions and, to that end, painstakingly combed through the voluminous record to review the evidence, the post-trial submissions by both parties, and the arguments presented. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 846 n. 16 (9th Cir. 2014) (recognizing deference to the trial court's decision to grant a new trial because the trial court viewed the tenor and demeanor of the testimony presented at trial); *McIntosh*, 2010 WL 2698747, at *12. Having done so, the Court is left with the inescapable conclusion that Plaintiff's counsel knowingly presented to the jury an inaccurate and incomplete portrayal of the compensation paid to and promised to be paid to Sweet for her testimony. This fundamentally interfered with the jury's ability to weigh the credibility of Sweet's testimony, vis-à-vis the other witnesses and evidence, and with defense counsel's ability to fully and fairly present their case. Fed. R. Civ. P. 60(b). Further, the Court finds the misconduct of Plaintiff's counsel constitutes plain and prejudicial error warranting a new trial. Fed. R. Civ. P. 59(a)(1)(A).

No one disputes that Sweet was an important witness for Plaintiff on several of the contested issues. Indeed, counsel for Plaintiff described Sweet as a "critical" witness. (Dkt. 200.) Her testimony was central to the liability finding. Plaintiff relied on Sweet to rebut Defendants' arguments concerning Hilliard's truthfulness and his ability to return to work, and to discredit the fitness for duty evaluation performed by Defendants' doctor, Ronald B. Tye. The Court itself cited Sweet's trial testimony as among the bases for its ruling denying Defendants' Rule 50 motion at the close of evidence during trial. (Dkt. 176 at 1735.) Sweet's testimony and credibility was particularly important to the jury's

determination and, ultimately, its verdict. The full truth about the compensation paid and promised to be paid to Sweet was directly relevant to her credibility and potential bias, but was not disclosed to defense counsel or made known to the jury.[4] This gravely compromised the integrity of the judicial process by interfering with the jury's task of weighing the credibility of Sweet's testimony and rendering a fair and impartial verdict.

It is clear from the record that Plaintiff's counsel had full knowledge that Sweet had been tendered more than $40 prior to trial with her subpoena for trial, and that they had *promised* and intended to pay Sweet an additional sum of money following trial. (Dkt. 185-1 at ¶ 5-l.) Neither fact was fully disclosed to defense counsel or to the jury prior to or during trial.[5] Thus, defense counsel had no reason or basis to contest Sweet's testimony during cross examination or Plaintiff's closing argument regarding the $40

---

[4] The truth or falsity of Sweet's testimony about her witness fee is not determinative of the present motions. One interpretation of the record is that, when asked "[a]re you being paid for your testimony today," Sweet's response of "$40" was truthful, because she was entitled to an attendance fee of $40 for each day of her testimony. 28 U.S.C. § 1821(b). Conversely, because Sweet had received a payment in the amount of $91.50 prior to trial, her response of "$40" could be viewed as untruthful. This discrepancy does not change the Court's conclusion stated herein. The basis for granting a new trial is not any false testimony by Sweet but, rather, the misrepresentations and conduct of Plaintiff's counsel discussed herein which substantially prejudiced the integrity and fairness of the trial process.

[5] Plaintiff argues the defense knew, or should have known, Sweet had been paid more than $40 because they had been provided a copy of the subpoena and trial schedule prior to trial. However, this contention ignores the fact that the copy of the subpoena sent to defense counsel did not disclose the check sent to Sweet was for $91.50, and listed the date of Sweet's testimony as only November 8, 2021. (Dkt. 185-2, Ex. B.) While the defense was aware Sweet was anticipated to testify on one of two days, or both, they did not know she had already been paid for two days of testimony at the time of their cross examination. It was not until after trial when the defense receive the initial bill of costs listing her fees as $91.50, that they learned she had been paid more than $40 prior to trial. (Dkt. 151-2 at 58.)

**MEMORANDUM DECISION AND ORDER - 12**

paid for her appearance at trial. Plaintiff's counsel did not correct or clarify Sweet's curt response during cross examination that she had been paid only $40 for the inferred inconvenience of appearing after completing a twelve-hour shift at work. Rather, Plaintiff's counsel deliberately emphasized Sweet's testimony and the context of the same, to Plaintiff's unfair advantage, during closing argument to bolster and contrast Sweet's credibility from other "high-paid hired gun[s]." (Dkt. 180 at 2718.)

Plaintiff's counsel maintains there was no need to clarify or correct Sweet's testimony because it was "not material to the substance of her testimony, and at most constitutes harmless error." (Dkt. 188 at 17.) This misses the point. Whether and to what extent the compensation paid to and promised to be paid to Sweet was material or immaterial to the jury's consideration of her testimony was not for Plaintiff's counsel to determine. The lack of transparency by Plaintiff's counsel withheld the full extent of the compensation of Sweet from opposing counsel, the Court, and - most importantly - the jury. This interfered with the jury's exclusive role of determining the weight and credibility of Sweet's testimony. Moreover, Plaintiff's counsel clearly must have believed her testimony was material at the time he made his closing argument, given he relied on the very testimony he now claims to be immaterial to bolster Sweet's credibility and discredit other witnesses. Far from immaterial or harmless error, the Court finds this was plain error resulting in a fundamental miscarriage of justice.

Considering the totality of the circumstances, the Court finds Sweet's testimony and the manner in which Plaintiff's counsel relied upon her testimony during closing argument was relevant and extremely influential to the issues before the jury for their

**MEMORANDUM DECISION AND ORDER - 13**

deliberations and verdict. This was a close case with both parties having strong arguments and evidence supporting their respective positions. As evident from the trial transcript, there was a great deal of contested evidence weighing for and against both parties on several issues. The jury's factfinding task was not an easy one.

Plaintiff's counsel, and only Plaintiff's counsel, knew the full truth about the compensation paid to or promised to be paid to Sweet. Even if, as Plaintiff argues, the defense knew Sweet had been paid $91.50 prior to trial based on the subpoena for potential testimony on two trial days, defense counsel did not know Sweet had been promised an additional fee. (Dkt. 200) (During the motion hearing counsel for Defendants stated Plaintiff's counsel never advised her of any arrangement with Sweet, unlike the other witnesses.). It was therefore incumbent upon Plaintiff's counsel to clarify Sweet's testimony during redirect to reflect that she had been paid more than $40 prior to trial[6] and, more so, to disclose that Plaintiff intended to pay Sweet a reasonable fee for her time after trial, particularly where counsel relied on the circumstances of Sweet's witness fee in closing argument. Such fairness and candor are expected and required of all attorneys as officers of the Court. This misconduct of Plaintiff's counsel plainly infringed on the fundamental integrity and fairness of the judicial process in a number of ways that simply cannot be excused.

---

[6] The failure of Plaintiff's counsel to clarify Sweet's testimony during redirect alone may not command a new trial, if the only incomplete testimony involved the $91.50 that was tendered with the subpoena. However, that is not what happened here.

**MEMORANDUM DECISION AND ORDER - 14**

It is wholly unreasonable for Plaintiff to argue defense counsel should have inquired further during cross examination, given the defense knew only that Sweet was designated as a non-retained expert[7] who testified that she had been paid $40 for her appearance, consistent with the daily statutory witness fee required to be tendered with a subpoena. The examination of Sweet was important to both parties. The Court's own recollection is that the cross examination of Sweet was notably tense. Had the defense known Sweet had been promised payment of a fee in addition to the statutory witness fee, defense counsel may have had a basis for further cross examination challenging Sweet's potential bias and credibility. Withholding from the defense the complete measure of the compensation to be paid to Sweet was prejudicial and unfairly impacted defense counsels' ability put on their case.

The full extent of the payment tendered to Sweet with the subpoena and the $500 payment sent the day after trial were not revealed until discovered by defense counsel during a review of Plaintiff's documentation for the bill of costs. (Dkt. 158-1 at ¶ 4); (Dkt. 166); (Dkt. 185-2, Ex. C.) When defense counsel inquired about the $500 payment to Sweet, the explanations provided by Plaintiff's counsel were vacillating and

_____

[7] Defendants argue Plaintiff's counsel tactically avoided the expert disclosure requirements of Rule 26 by designating Sweet as a non-retained expert, while promising to pay her an additional reasonable fee which was not disclosed. (Dkt. 192 at 4.) While it may be "customary" for Plaintiff's counsel to pay professionals a reasonable fee for their time, the lack of transparency by Plaintiff's counsel concerning Sweet's compensation skirted Rule 26's disclosure requirements.

**MEMORANDUM DECISION AND ORDER - 15**

incomplete. (Dkts. 158, 158-1, 185-1, 185-2, 201.)[8] To date, it remains unclear whether

and precisely when Sweet submitted an invoice, in a different amount, for $250,

following trial. (Dkts. 185-1, 185-2, 201.)[9] Ultimately, Plaintiff submitted a supplemental

bill of costs reducing the amount sought for their post-trial payment to Sweet by one-half,

which Plaintiff contends the defense should be "pleased" with, given the reduction. (Dkt.

151); (Dkt. 185-2 at ¶ 14.) Such atonement does not address or cure the harm to the

judicial process resulting from the failure to disclose the promise to pay Sweet a fee prior

to Sweet's trial testimony and the failure to accurately convey to the jury the true

circumstances of the compensation to be paid to Sweet after she testified.

     What is clear in the record is that Plaintiff's counsel *promised* to pay Sweet a

---

[8] On November 30, 2021, Plaintiff's counsel represented to the defense that they had received an "invoice" from Sweet for $500, when in reality the document purporting to be the "invoice" is for $250. (Dkt. 185-2, Ex. D.) The representation that the amount of the "invoice" was $500 was apparently based on an assumption by Plaintiff's counsel without actually having reviewed the physical invoice. (Dkt. 185-2 at ¶ 12.) During the hearing, Plaintiff's counsel described the discrepancy between the amount of the payment and the amount of the invoice as a "bookkeeping error," and attested that the first time he personally saw the "invoice" and noticed the difference between the check issued and the invoice received was on December 1, 2021. (Dkt. 185-2 at ¶¶ 15-16); (Dkt. 201 at ¶ 7.) The manner in which the undisclosed fees were paid to Sweet, and the many fluctuating and conflicting explanations of Plaintiff's counsel for the payment made to Sweet the day following trial, are burdensome to reconcile and deeply troubling to the Court. However troubling, the "bookkeeping error" is not the basis for granting a new trial and relief from judgment here. Rather, the relief is granted based on counsel's failure to disclose the full extent of the compensation paid to and to be paid to Sweet, and knowingly using Sweet's incomplete testimony during Plaintiff's closing argument.

[9] The document referred to as an "invoice," Docket Number 151-2 at 72, is strikingly similar in appearance and text to the document created by Plaintiff's counsel reflecting the statutory witness fee paid to Sweet, Docket Number 151-2 at 58. Nevertheless, Plaintiff's counsel now attests that the $250 "invoice," Docket 151-2 page 72, was received in the mail of the law firm and was retained in the firm's paper file with the check stub sometime <u>after</u> the check for $500 had been sent to Sweet the day after trial on November 19, 2021. (Dkt. 201 at ¶¶ 5, 6.)

reasonable fee prior to trial and knew during her trial testimony that he owed Sweet a further payment, yet did not clarify her testimony or disclose the promise to pay to the defense or to the jury before highlighting her inaccurate and incomplete testimony during closing argument. (Dkt. 185-1 at ¶ 5-k and 5-l) ("I felt bad for Justine *when she testified* she had only been paid $40…," and "I believe she had likely forgotten I *promised* to pay a reasonable fee for her time….") (emphasis added). The day after his closing argument and the jury had returned a verdict in Plaintiff's favor, counsel for Plaintiff unilaterally decided to pay Sweet an additional $500 in exchange for her testimony, *before* receiving any invoice from Sweet. (Dkt. 185-1 at ¶ 5-l); (Dkt. 201 at ¶¶ 5, 6.) This record belies the statement of Plaintiff's counsel during the motion hearing that he simply "forgot" about his promise to pay Sweet when he highlighted her testimony in the manner he did during Plaintiff's closing argument. (Dkt. 200.)

The Court simply cannot condone this conduct and the manner by which Plaintiff's counsel invaded the province of the jury. In our system of justice, the jury is charged with making credibility determinations about the evidence and testimony. Here, it was the jury's exclusive role to weigh the credibility of Sweet and every other witness who testified. Such was neither the role nor responsibility of Plaintiff's counsel to undertake on his own. Plaintiff's counsel withheld information from the jury known only to him, and indeed also from opposing counsel and the Court – information the jury did not have when deciding whether and to what extent to believe Sweet's critical testimony.

Under these circumstances, the Court finds the integrity of the judicial process itself was compromised and a serious miscarriage of justice occurred. Sweet's

incomplete, uncorrected testimony concerning the witness fee she received prior to trial and the additional compensation Plaintiff's counsel had promised her, coupled with statements of counsel made during closing argument, severely interfered with the very core of the jury's function, such that there are serious questions as to the fairness and legitimacy of the verdict. The conduct permeated the entire proceeding, not just closing argument, and fundamentally prejudiced the defense. Fed. R. Civ. P. 59(a)(1)(A); *Hemmings*, 285 F.3d at 1192.[10] The Court further finds Defendants have proven by clear and convincing evidence that the verdict was unfairly obtained and the conduct complained of prevented Defendants from fully and fairly presenting their defense. Fed. R. Civ. P. 60(b)(3); *Casey*, 362 F.3d at 1260; *Dixon*, 316 F.3d at 1046-47.

As explained above, the Court finds the circumstances surrounding the compensation paid to Sweet, her testimony, and Plaintiff's closing argument relying on the same, necessitates a new trial under Rule 59(a)(1)(A), and relief under Rules 59(e) and 60(b)(3).

## 2.    Comments Made During Closing Argument

Defendants also move for a new trial under Rule 59(a) based on three other comments made by Plaintiff's counsel during closing argument to which Defendants did

---

[10] The harms resulting from the misconduct found here that demands a new trial and relief from judgment are fundamentally different from the isolated comments made during closing argument discussed in the next section of this decision. The misconduct associated with the compensation of Sweet extended beyond statements made in closing argument and compromised the entire judicial process itself by interfering with the jury's central role and preventing the defense from fairly putting on its case. These are different concerns than the arguments raised by Plaintiff which focus on the sufficiency of the evidence and his contention that the verdict was correct.

not object but, in hindsight, contend constitute: 1) statement of a fact not in evidence; 2) improper vouching; and 3) improper suggestion that the jury serve as the voice of the community. (Dkt. 164 at 12-19.) Plaintiff maintains the closing argument was proper, and Defendants waived their objections by failing to raise them during trial. (Dkt. 188 at 18-26.)

Because Defendants did not object during closing argument or before jury deliberations to any of these three comments, plain error is required for Defendants to prevail on their Rule 59 motion. *See Hemmings*, 285 F.3d at 1193. Having witnessed the trial and summations of counsel first-hand, the Court finds the first contested statement was improper but not prejudicial, and that the second and third contested comments were not plainly erroneous. *See e.g. Smith v. City and County of Honolulu*, 887 F.3d 944, 954 (9th Cir. 2018) (The district court is in the best position to evaluate a juror's ability to deliberate.); *Experience Hendrix*, 762 F.3d at 846 n. 16; *McIntosh*, 2010 WL 2698747, at *12. Thus, none of the three allegations of plain error are a basis for granting relief under Rule 59.

### A.      Statement of a Fact Not in Evidence

During closing argument, Plaintiff's counsel suggested that Hilliard had experienced a PTSD event during the trial:

> I don't know if any of you noticed during the trial, by the way, when Dr. Tye was testifying about Brent's PTSD event. And if any of you know what a trigger is, people that have emotional distress, especially PTSD, and Dr. Tye, who is a counselor, who should know better, described, in graphic detail, what Brent had told him about the color of the boy's hair, the color of his eyes, the gunshot wound to his head. And I don't know if any of you saw Brent, he shut down.

MEMORANDUM DECISION AND ORDER - 19

(Dkt. 180, TR at 2732-33.) Defendants assert this statement improperly called the jury's attention to matters not in evidence and sought to invoke the sympathies of the jury to find in Plaintiff's favor based on emotion rather than upon the evidence. (Dkt. 164 at 17-18.) Plaintiff maintains the statement was proper because there was evidence presented concerning his PTSD. (Dkt. 188 at 24-25.) Plaintiff's response misses the point.

While evidence was presented that Plaintiff suffered from PTSD, there was no testimony or evidence that Plaintiff experienced a PTSD event <u>during</u> the trial as suggested by Plaintiff's counsel in closing argument. (Dkt. 171, TR at 209, 318-319), (Dkt. 173, TR at 840), (Dkt. 175, TR at 1264-1268, 1365-1367.) The statement quoted above was effectively Plaintiff's counsel testifying to the jury about what he observed about Hilliard during the trial. It was not evidence, highly inappropriate, and fell outside the bounds of proper closing argument. This, the Court finds, was plain error.

However, the Court finds the error was not prejudicial such that a new trial is warranted to prevent a miscarriage of justice. In the Court's view of the totality of evidence presented during trial, this inappropriate argument by counsel did not compromise the fundamental fairness of the proceeding given the context and manner in which it was made.[11] That being said, the Court does not condone the misconduct and is

---

[11] Notably, the Court's concluding jury instructions given immediately following closing arguments began: "Members of the Jury, now that you have heard the closing argument of counsel, I want to remind you that argument and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their closing arguments and at other times is

extremely troubled by the impropriety of the statement by counsel of a fact not in evidence. Indeed, the Court gave serious consideration to including the statement as an additional basis for granting a new trial. At the end of the day, however, the Court finds this was an isolated comment made during closing argument which, on the whole, does not rise to the level of prejudicial plain error. *Settlegoode*, 371 F.3d at 518-20; *Cooper*, 945 F.2d at 1107. That is to say, in viewing the totality of the circumstances, the Court finds the statement did not sufficiently permeate the entire proceeding such that the jury was influenced by passion or prejudice in reaching its verdict. *Hemmings*, 285 F.3d at 1192-93. The Rule 59 motion will be denied on this basis.

### B.      Vouching and Appeal to the Jury's Voice

The second and third comments contested by Defendant are those made by Plaintiff's counsel vouching for the credibility of Hilliard, and suggesting that the jury serve as the voice of the community. As to the vouching, Plaintiff's counsel stated:

> This is my friend. And if I -- I get excited. We're Buhl boys. And I have a lot of respect for that man. I didn't know much about him until I got involved in this lawsuit. And the thing that impressed me the most about this man in this lawsuit, there was not one single witness that said a bad thing about him as a person. That wouldn't happen to me, I don't think. Not many of us.

---

intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way that the lawyers have stated them, your memory of them controls." (Dkt. 180, TR at 2787-88), (Dkt. 145, Jury Instr. 51.) The Court gave similar admonitions to the jury at various points during trial.

**MEMORANDUM DECISION AND ORDER - 21**

(Dkt. 180 at 2708-09.) Counsel made other statements during his closing argument that Hilliard was a "nice man" and "honest." (Dkt. 180 at 2709-10, 2726-27.) As to the voice of the community suggestion, Plaintiff's counsel stated:

> Now, your role, you are the voice the of the community. You have been selected as the eight fair jurors that will tell us what you think about this. You're going to tell the community -- your voice is going to get heard, loud and clear. You're going to make a decision, and the community is going to find out what your decision was. And I want you to feel good about your decision because you're going to have to go home at night. And this has been a long three weeks. You've listened to a lot of evidence. I want you to make a decision that you're proud of.

(Dkt. 180 at 2733.) The Court finds neither of these statements constitute plain error.

Hilliard's truthfulness was at issue during the trial and integral to the defense theory. The comments Plaintiff's counsel made during closing argument concerning honesty spoke to Hilliard's character in the context of discussing the evidence presented during trial. Therefore, the statements were not plainly improper vouching.

Likewise, the suggestion that the jury should act as the voice of the community does not rise to the level of plain error. The Ninth Circuit has stated: "[a]n appeal to the jury to be the conscience of the community is not impermissible unless it is specifically designed to inflame the jury." *United States v. Koon*, 34 F.3d 1416, 1444 (9th Cir. 1994) (internal quotations and citations omitted); *accord, Mooney v. Roller Bearing Co. of Am., Inc.*, 2022 WL 1430412, at *5-6 (W.D. Wash. May 5, 2022) (Conscience of the community statements during closing argument are not categorically impermissible, unless "calculated to incite the jury.").

**MEMORANDUM DECISION AND ORDER - 22**

The isolated statement at issue here was not plainly designed to inflame the passions or appeal to the prejudices of the jury to use its verdict as a means of correcting a larger societal problem. Rather, the statement was made in the context of Plaintiff's negligent infliction of emotional distress claim. (Dkt. 180, TR at 2732-33.) Counsel's argument was aimed at convincing the jury to find in Plaintiff's favor and to award damages appropriate to remedy the emotional distress Plaintiff suffered by the disability discrimination he alleged. Unlike a case where a court finds plain error, here there was no improper suggestion that the verdict should be based on anything other than the evidence presented during trial or to impose any burden upon the jury other than their duty to decide the case based on the evidence received during trial. Accordingly, the Rule 59 motion will be denied with regard to the alleged improper vouching and alleged improper appeal to the jury's voice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1)  Plaintiff's Motion for Attorney Fees (Dkt. 152) is deemed **MOOT**.

2)  Plaintiff's Supplemental Motion for Taxation of Costs (Dkt. 151) is deemed **MOOT**.

3)  Defendants' Motion for Judgment as a Matter of Law After Trial (Dkt. 163) is deemed **MOOT**.

4)  Defendants' Motion for New Trial or to Alter or Amend Judgment (Dkt. 164) is **GRANTED**.

5) Defendants' Motion to Set Aside Judgment or Amend Findings or Grant New Trial (Dkt. 165) is **GRANTED**. The Amended Judgment (Dkt. 154) is **VACATED**.

6) Defendants' Motion for Relief from Judgment (Dkt. 166) is deemed **MOOT**.

7) The parties are directed to confer regarding new trial dates and file a status report setting forth their proposed trial settings on or before **October 5, 2022**. Dist. Local Civ. R. 37.1.

DATED: September 14, 2022

Honorable Candy W. Dale
United States Magistrate Judge