Jeffrey J. Hepworth, ISB No. 3455
HEPWORTH LAW OFFICES
2229 W. State Street
P.O. Box 2815
Boise, ID 83701-2815
Telephone: (208) 333-0702
Facsimile: (208) 246-8655
courtservice@idalawyer.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENT E. HILLIARD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TWIN FALLS COUNTY SHERIFF'S OFFICE, a Public Entity, TWIN FALLS COUNTY, a Public Corporation,<br><br>Defendants. | Case No. 1:18-cv-550-CWD<br><br>**MEMORANDUM IN SUPPORT OF Fed. R. Civ. P. 60(b) MOTION TO SET ASIDE JUDGMENT OF DISMISSAL AND REINSTATE JURY VERDICT AND JUDGMENT** |

This is a motion to set aside a judgement of dismissal and settlement agreement based upon new evidence of fraud on the Court perpetrated by the County. Fed. R. Civ. P. 60(b)(2), (3). Plaintiff asks this court to reinstate the jury's verdict and Judgment pursuant to Fed. R. Civ. P. 60(b)(6), under clearly applicable law, and because Justine Sweet's test results were undisputed and cannot be disregarded. New evidence proves the County violated Fed. R. Civ. P. 45(d)(1) and Fed. R. Civ. P. 26(b)(4)(E) when it failed to take "reasonable steps" to protect Sweet after they subpoenaed her for her deposition. The County hid their violation. Hepworth complied with those rules and made timely disclosure to the County and the Court. Rule 45(d)(1) requires sanctions against the County.

Specifically, the Defendant filed a post-trial motion January 3, 2022, claiming Plaintiff's counsel committed "fraud on the Court" by failing to disclose to Defense Counsel his willingness to pay Sweet a "reasonable fee" for her time. Defense counsel falsely claimed she did not know Mark Gritton charged $500/hour and Shelley Wray charged $100/hour for their time as fact experts. Defense Counsel falsely claimed it was a credibility contest between Dr. Tye and Ms. Sweet and the evidence of compensation of Tye compared to Sweet gave Hilliard an "unfair advantage." Newly discovered evidence in the bar commission proceeding in *Idaho State Bar v. Jeffrey J. Hepworth*, ISB Case No. FC 23-02, revealed that Defendant's counsel misled this Court about what she knew about compensation of the fact experts, and specifically Justine Sweet. Defense counsel intentionally failed to disclose the fact Justine Sweet did not charge for her time in the deposition defense counsel took and failed to take "reasonable steps" to protect Sweet. Rule 45(d)(1) requires the Court to sanction the party violating the rule. Fed. R. Civ. P. 26(b)(4)(E) was also violated by the County. In contrast, Hepworth complied with the rules by paying Sweet what he believed to be a "reasonable fee" after trial, and promptly disclosed the decision to both opposing counsel and the Court. Defense Counsel wrongly impugned the integrity of Justine Sweet and Jeff Hepworth when she knew there was no factual basis for a claim of fraud. It was Pam Howland that failed to disclose to the Court evidence Justine Sweet was not motivated by financial considerations when she testified about the written test result generated in August 2017. This was evidence only Pam Howland knew and failed to disclose to the Court or Hepworth.

Plaintiff asks that this Court consider the newly discovered evidence and vacate its prejudicial conclusion that Plaintiff's counsel committed fraud on this Court when Hepworth took "reasonable steps" to protect the subpoenaed witness and made full timely disclosure.

# I. FACTUAL BACKGROUND OF LAWSUIT

This case arises because Twin Falls County suspended Brent Hilliard on July 10, 2017, telling him that when he could come to work without taking his prescription medications, he could return to work. Hilliard consulted Crosspointe counseling and his primary care doctor to help him wean off his prescription medication. On July 20, 2017, Hilliard attempted to return to work by telling his supervisors he could return without taking medication. Rather than let him return, the County accused Hilliard of "substance abuse." The county selected Dr. Ronald Tye to conduct a "fitness for duty" on the basis of alleged "possible substance abuse dependency."(Stipulated Exhibit 005). Dr. Tye admitted he was not a "qualified" substance abuse expert and referred Captain Hilliard to undergo substance abuse testing by a qualified medical professional. Captain Hilliard was referred by his EAP counselor to Ms. Justine Sweet, LCSW, QP, who performed a GAIN-I Substance abuse assessment on August 23, 2017. *See* Plf. Ex. 206. The GAIN-I assessment concluded there was "no need for substance use disorder treatment." Plf. Ex. 206 at 2 (HILLIARD02174). Despite the conclusions of the GAIN-I assessment, and no other testing performed to the contrary, Twin Falls County refused to allow Mr. Hilliard to return to work.

## A. Justine Sweet's Deposition and Trial Testimony Was Undisputed and Unrebutted

The only witness to testify at trial that was both 1) educationally and professionally qualified to diagnose whether a patient had a "substance abuse or dependency disorder;" and 2) actually performed a substance abuse assessment of Captain Brent Hilliard—was Justine Sweet. Importantly, this was not a credibility contest between "the credibility of Sweet's testimony, vis-à-vis the other witnesses and evidence," as the County misleadingly argued in post-trial motions, and which this Court was deceived into relying upon in its *Memorandum Decision and Order*. *See* Dkt. 202 at 11. Dr. Tye specifically and undisputedly admitted that he personally was not qualified

to assess whether Captain Hilliard suffered from a substance abuse disorder, and never performed any tests to reach any such conclusion:

> A: Well, keep in mind that I'm not a substance abuse expert. I don't do that. I don't have any training in area."

Dkt. 175 1232:8-10. *See* also at 1235: 21-24. Nor did Dr. Tye question Justine Sweet's qualifications to perform the necessary substance abuse assessments:

> Q. And you're not critical of Brent's choice to go to Crosspointe to get a substance abuse evaluation, are you?
>
> A. No, not at all.

Dkt. 175 at 100 (Tr. Trans. 1288 at 20–23). Dr. Tye never questioned Justine Sweet's credibility (personally), or the established methods of the GAIN-I assessment. Rather, Dr. Tye called into question <u>Brent Hilliard's</u> credibility, and accused <u>Brent Hilliard</u> of lying *to* Justine Sweet (without any factual basis to make such discriminatory accusation):

> Q. BY MR. HEPWORTH: So let's break that down. You've expressed an opinion today and in your report that <u>Captain Hilliard</u> was not <u>honest with Justine Sweet</u>, correct?
>
> A. More than likely, yes.
> . . .
> Q. And you had full faith in the expertise of Justine Sweet?
>
> A. That, I don't know. I had never met her.
> Q. Okay. So are you questioning Justine Sweet's integrity?
>
> A. <u>Not so much</u>. I'm questioning whether or not Mr. Hilliard was honest and open about his problems. I suspect that he wasn't.

Dkt. 175 at 111–112, Tr. 1299:20–1300:13 (emphasis added).

The only other witness that may have had the educational qualifications to assess Mr. Hilliard for a substance abuse disorder, or challenge the veracity of the GAIN-I assessment, was

Defendant's retained expert, Dr. Fabrice Czarnecki. Dr. Czarnecki specifically testified that he did not disagree with Justine Sweet's evaluation:

> Q: And you're not here to offer an opinion, at least I didn't hear any opinion by you, that you disagreed with Justine Sweet, who did the substance abuse evaluation, correct?
>
> A: You mean the opinion that MR. Hilliard did not have a substance abuse disorder?
>
> Q: Correct.
>
> A: I have no reason to disagree with her.

Dkt. 178 at 105, Tr. 2158:9-16 (emphasis added). Given that Defendants' own experts did not call into question Justine Sweet's credibility, or the veracity of the GAIN-I assessment, Defendant's post-trial ad hominem attacks against Ms. Sweet are slanderous and without factual basis.

**B. Justine Sweet was only a "Percipient" Expert Witness and was Entitled to a "Reasonable Fee" when she was Subpoenaed for her Deposition and Trial**

The issue of whether an expert must make extensive disclosures including a written report, CV, list of cases and compensation or is an expert that need only disclose summary information depends on the basis of the expert opinion. The "retained or specially employed experts" are experts that are employed to form opinions based on information acquired after litigation has commenced. These experts are different than the Crosspointe expert witnesses (Gritton, Wray and Sweet), Dr. Dazley, and Dr. Tye. The latter formed their opinions in July and August 2017 based on testing, examination, and treatment of Hilliard prior to his termination in 2017. These are referred to as "percipient" witnesses.

> The Ninth Circuit concluded that a treating physician is exempt from the written report requirement only to the extent that the physician's opinion were formed during the course of treatment. Id. at 826. In cases involving treating physicians as experts, courts have followed *Goodman* and found that "the critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on

information reviewed in anticipation for trial.

*Doe. v. Manhattan Beach Unified School Dist.*, 2020 WL 7931596 (2020)(emphasis added).

In the *Doe* case, the expert was the Assistant Superintendent of a school that conducted a Title IX investigation and issued a report prior to litigation. *See also Goodman v. Staples the Office Superstore, LLC* 644 F3d 817 (2011). "Generally speaking, treating physicians are excused from this requirement. They are a species of percipient witness. They are not specially hired to provide expert testimony, rather, they are hired to treat the patient and may testify to and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a written expert report." (*Goodman* at 819).

> The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue.

*Nielson v. Hawley Troxell Ennis and Hawley, LLP*, 2021 WL 1124758

Justine Sweet's testimony was limited exclusively to the contents of her expert fit for duty written report which was given to Twin Falls County on August 29, 2017 and which the County disregarded. It was Justine Sweet's report that Brent Hilliard did not have a substance abuse problem and which the County disregarded which was the basis of the intentional discrimination claim. In fact, Hilliard filed a motion for summary judgment on the basis of the County's disregard of Sweet's Report. (Dkt. 36-1).

**C. Howland Violated Fed. R. Civ. P. 45 and Fed. R. Civ. P. 26(b)(4)(E) and Must Be Sanctioned**

Twin Falls County's legal counsel subpoenaed Justine Sweet to testify in a deposition. Fed. R. Civ. P. 45 required Howland to tender the mandatory $40 witness fee for her time. Fed. R. Civ.

P. 26(b)(4)(E) required Howland to pay Sweet, an expert, "a reasonable fee for time spent in responding to discovery."

> **Fed. R. Civ. P 26(b)(4) Trial Preparation: Experts**.
> (E) *Payment*. Unless manifest injustice could result, the Court must require that the party seeking discovery:
> (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)

It is clear Rule 45 imposed a duty on both Hepworth and Howland to take reasonable steps to protect Sweet's rights to payment for complying with the Subpoena's they issued.

> (d) **Protecting a person subject to a subpoena; Enforcement.**
> (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The Court for the district where compliance is required must enforce this duty and impose an appropriate sanction-which may include lost earnings and reasonable attorney fees-on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(b)(1) (emphasis added). Rule 45 explicitly required Howland and the County to pay Sweet *at least* a $40 attendance fee for the deposition. Fed. R. Civ. P. 45(c)(1) states the rules apply to a "trial, hearing or deposition." Fed. R. Civ. P. 45(d)(3)(C)(ii) allows the Court to order the "subpoenaed person reasonably compensated" if they are "unretained experts."

There is no dispute Hepworth paid Sweet the $40 per day witness fee and travel expenses, and after trial took "reasonable steps" to avoid imposing undue burden and expense on Sweet by paying her "reasonable compensation" and reporting it to opposing counsel and the Court.

There is also no dispute Howland did not pay Sweet the $40 per day witness fee, did not pay Sweet a "reasonable fee for time spent in responding to discovery" and did not "take reasonable steps to avoid imposing undue burden or expense on Sweet. Therefore, the Court must enforce the duty and impose a reasonable sanction on the County. However, the Court was unable to do so after the trial because the County hid its rule violations from the Court in order to avoid

Hilliard's jury verdict. The County and counsel misled this Court.

### D. Twin Falls County Deceived The Court Regarding The Known and Agreed Upon Arrangements With All Non-Report Writing Experts Under Fed. R. Civ. P 26(a)(2)(c)

Although Fed. R. Civ. P. 26 (a)(2)(c) does not require disclosure of fact experts (witnesses who do not provide a written report) compensation, Hepworth did keep Defense Counsel informed about billing rates. TFCSO actually knew the expert billing rates of Cross Pointe employees Gritton, and Wray, as well as Tye, and can only blame themselves for the jury not hearing that evidence at trial.

**Dr. Tye:** Dr. Tye's attorney Kevin West required Hepworth to pay Dr. Tye $175/hour (See Exhibit 11 to Supplemental Aff. of Jeff Hepworth). Following Dr. Tye's deposition, Hepworth contacted Howland to discuss pay arrangements for the other fact experts. Howland responded with an email expressing her understanding the "party deposing the expert will pay the experts' fees" and if an attorney met with the expert before the deposition that attorney "would be responsible for any time." *See* Deposition Exhibit 14. Dr. Tye testified at trial November 10, 2021.Hepworth inquired about Dr. Tye's charges for time but, Howland objected as <u>not relevant</u>. The Court sustained the objection for <u>relevance</u>. (Dkt 175 at 1218:19-21, 1220:19-1221:2).

***Shelley Wray*:** Shelley Wray wrote a "return to work" letter dated August 21, 2017 (Trial Ex. 205). On June 2, 2017 Hepworth disclosed to Idaho Employment lawyers Shelley Wray charged $100/hour. (Dep. Ex. 19 to Aff. of Jeff Hepworth). Howland deposed Wray June 3, 2020 at 2:00p.m (Dkt 95-9). Howland falsely claims she did not know Wray's billing rate. Wray was not asked how much she charged at trial.

***Mark Gritton***: Mark Gritton wrote a "return to work" note dated August 24, 2017 (Trial Ex. 204). Pam Howland deposed Gritton June 3, 2020 at 9:00a.m (Dkt 95-3). Gritton told Howland

he was being paid $500/hour. Howland confirmed she would pay him $500/hour "for your time today." Gritton told Howland he had been paid a $1,000 retainer by Hepworth and had used some of it by meeting with Hepworth for 1 hour previously. *See* Dkt. 95-3 Dep. Mark Gritton at 14-17. Gritton testified November 8th (before Justine Sweet) (Dkt 173 at 782-844 Direct, 845-97). No one asked Gritton how much he charged at trial. Howland did not attempt to elicit testimony of his $500 per hour rate of pay. Howland's conduct of not asking Gritton and Wray how much they charged proves the pay rate is not material evidence with regard to the percipient experts.

## II. TWIN FALLS COUNTY AND COUNSEL DEFRAUDED THIS COURT

There are nine elements constituting fraud. "To establish actionable fraud, also referred to as intentional misrepresentation, a plaintiff must prove the following elements: (1) a representation (2) its falsity (3) its materiality; (4) the speakers knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon and (9) his consequent and proximate injury. *G&M Farms v. Fank Inc. Co.* 119 Idaho 514 at 518 (1991).

### A. Howland Knowingly Made False Material Representations of Fact (Elements of Fraud 1-4)

Pamela Howland made materially false misrepresentations to the Court in Support of her motion under Rule 60 to set aside the Jury Veridct. The false representations of fact were set forth in the Reply Brief in Support of Defendant's Motion for Relief from the Judgement Under Rule 60 (Dkt. 191 filed 2/7/22).

The following false representations were made. These statements satisfy elements (1)-(4) of a prima facie claim of fraud:

**False Statement of Fact No. 1:**

> Plaintiff's counsel's payments to Mark Gritton are even more egregious. In Plaintiff's motion for fees and costs, invoices show that Hepworth Law Office paid Mark Gritton a retainer back in April 2020 of $1,000.00 and then paid him $500/hr for his testimony at trial, ultimately cutting him a check for another $3,272.32 after trial. (Dkt 151-2 at 40-41) Mr. Gritton clearly was "retained" and should have been subjected to disclosure rules for retained experts.

(Dkt 191 at 8). Howland intentionally led the Court to believe she first learned about the payments to Gritton after trial when she reviewed Hilliard's Petition for costs Dkt. 151. That false material statement of fact was used to explain why Howland didn't ask Gritton about compensation.

Howland asked Gritton in his deposition in June 2020, 17 months before trial, about his compensation. Gritton told Howland he charged $500 per hour and Howland agreed to pay him $500 per hour. Howland falsely and intentionally mislead the Court about her knowledge about Gritton's expert compensation rate in order to persuade this Court to grant a new trial. Howland also falsely claimed she didn't question Gritton about compensation because of the order of witnesses, claiming Sweet was the first of the Crosspointe witnesses to testify, another false statement of fact.

**False Statement of Fact No. 2:**

Howland Falsely stated:

> [B]y contrast, the Crosspointe witnesses (Sweet, Gritton and Wray) were non-retained experts and did not have to disclose any compensation, so at trial, Defendants were attempting to determine whether they had been paid. Ms. Sweet was the first of the three to testify" (Dkt. 191 at 6).

First of all, Gritton was the first Crosspointe witness to testify. (See Court minutes Dkt. 130 day 4). Sweet and Wray testified on Day 5, November 9th. (Dkt. 131). The statement that "defendants were attempting to determine whether they had been paid" is false. In fact, Howland knew Wray was charging $100 per hour (See Deposition Ex.19 to Aff. of Jeff Hepworth) in June 2020. Further,

Howland made no attempt to ask Wray either in her deposition or at trial about her billing rate. (See Dkt. 95-9 and Dkt. 174). Both parties knew the fact experts must be paid a "reasonable fee" for their time.

**False Statement of Fact No. 3:**

> Jeff Hepworth states under oath that he discussed "the arrangement to pay Dr. Tye, Mark Gritton and others with Ms. Howland and that Pam Howland knew as much as [he] did about the fee arrangements for the expert fact witnesses. (Dkt. 185 at 6) This statement is not true. Howland Decl. ¶ 2-5. In fact, Defendants only learned about the payment to Ms. Sweet when Plaintiffs sought to recover from Defendants the $500 fee paid to her after trial… "Far from some type of forthright disclosure, this merely illustrate the brazen manner by which Plaintiff has violated applicable rules while seeking reimbursement for the underlying misconduct. (Dkt. 191 at 10).

Howland does not cite to the "applicable rules" or the evidence to support her defamatory and blatantly false statements. Instead she just makes broad conclusory statements not unlike her character assassination of Brent Hilliard when she attacked him in her opening statement repeatedly claiming he was "dishonest" instead of simply discussing the evidence as required by the rules(See IRCP 3.4 Fairness to Opposing Party and Counsel).

> Rule 3.4: Fairness to Opposing Party and Counsel
> A lawyer shall not:
> (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence… or state a personal opinion as to the justness of a cause, the credibility of a witness,

The evidence is now undisputed Howland knew Dr. Tye was charging $175/hour for his time. Howland has not disclosed to the Court what she paid Dr. Tye or when she first became aware of his charges. The email from Hepworth to Jennifer Walrath sent June 2, 2020 proves Defendants knew Wray charged $100/hr. Defendants have not disclosed to the Court if they paid Wray as required by FRCP 26(b)(4)(E). Instead, they misled the Court by claiming they didn't know how much Wray charged for her time. The evidence shows Gritton told Howland in the deposition he

charged $500/hour and had received a $1,000.00 retainer in June 2020. Howland had the audacity to make the false and outrageous claim she only learned about Gritton's billing rate and retainer after trial. Howland states in her brief "plaintiff's counsel's payments to Mark Gritton are even more egregious." Howland has not disclosed if she paid Gritton $500 per hour as she agreed in the deposition as required by FRCP 26(b)(4)(E). Instead, she falsely and maliciously accused Hepworth of fraud. Unbelievable.

With respect to Justine Sweet, Hepworth has now discovered what Howland failed to disclose to the Court or the jury. Howland knew Sweet was owed a "reasonable fee for time" pursuant to Fed. R. Civ. P 26(b)(4)(E). Promised to pay Sweet on June 9, 2020 but violated Fed. R. Civ. P. 45 and Fed. R. Civ. P. 26 by failing to pay Sweet. Howland then falsely and maliciously accused Sweet and Hepworth of "fraud on the court" and accuses Sweet of perjury when Howland knew as a matter of fact Sweet did not seek payment for her time. Howland had from June 9, 2020 until now to disclose to the Court she promised to pay Sweet and didn't because Sweet did not charge Howland. It is obvious Justine Sweet was inexperienced and intimidated testifying in a deposition and trial. Sweet likely didn't understand Fed. R. Civ. P. 45 required both Hepworth and Howland to "tender" payment with the subpoena and Rule 26(b)(4)(E) required Howland to pay Sweet a "reasonable Fee" for time spent in responding to discovery.

The facts and law are clear. Hepworth made timely disclosures of his decision made November 19, 2021 that $100 per hour was a "reasonable rate" to pay Sweet for her time. Hepworth did not believe Sweet would send a bill at all given her testimony. Now that all facts are known, Hepworth's belief is supported by the fact Sweet did not send a bill to Howland after June 9, 2020. When Sweet did send a bill to Hepworth after trial, it was for $125/hour, not $100 proving

Sweet and Hepworth did not have an agreement on a rate. The evidence now shows Howland contends Sweet was not entitled to <u>any</u> payment whatsoever. Howland has violated IRPC 3.4(c)

> Rule 3.4: Fairness to Opposing Party and Counsel
> A lawyer shall not:
> (c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists,

There can be no dispute Howland violated FRCP45 and FRCP 26 by failing to pay Sweet. Howland did not make an "open refusal based on an assertion that no valid obligation exists." Instead, she hid the violation, used it to mislead the Court and her clear motivation was to deprive Brent Hilliard of the $664,275.40 judgment and a ruling on the motion for costs and attorney fees. Howland clearly committed fraud on the Court and Hilliard.

**B. Elements 5-9 of Fraud**

Howland made false representations of fact and failed to disclose material facts to the court in support of her motion to set aside the jury verdict to get a new trial. The court clearly relied on the false representations and granted the County's motion. (Dkt 202) The Court's written decision proves Judge Dale's reliance on the false statements and non-disclosures and had the right to assume Howland's statements were true…

> Having done so, the court is left with inescapable conclusion Plaintiff's counsel knowingly presented to the jury an inaccurate and incomplete portrayal of the compensation paid to and promised to be paid to Sweet for her testimony. This fundamentally interfered with the jury's ability to weigh the credibility of Sweet's testimony, <u>vis-à-vis the other witnesses and evidence</u>, and <u>with defense counsel's ability to fully and fairly present their case</u>. (Dkt. 202 at 11)(emphasis added)

The Court's decision proves the Court believed false statement number 1 that Howland did not know Gritton charged $500/hour and had received a $1,000 retainer in June 2020. The court's decision confirms it believed and accepted as true false statement No. 2 that Howland did not know Wray charged $100/hour for her time and Howland knew both Gritton and Wray's billing rates

when they testified. It confirms the Court accepted as fact that Ms. Sweet was the first of the three to testify and that her answer caused Howland to not ask Gritton and Wray what they charged.

The Court's statement that Sweet's testimony in response to Howlands one question fundamentally interfered with the jury's ability to weigh the credibility of Sweet's testimony, vis-à-vis the other witnesses is clearly referring to Dr. Tye, the defendant's fit for duty expert. Howland wrote,

> that the three Crosspointe employees (Sweet, Gritton, and Wray) were hardworking people enduring personal sacrifice to do the right thing and, hence were more believable than Dr. Tye and the expert witnesses called by Defendants.
> (Dkt 191 at 6)

This statement by Howland does not accurately portray Hepworth's argument. However, it is true Howland blames Hepworth for Howland not asking Gritton or Wray how much they charged at trial. Howland blames Hepworth for the jury not receiving evidence of Tye's compensation. The Court obviously accepted Howland's false statements despite the fact Hepworth did ask Dr. Tye if he had been paid by Hepworth for his time and Howland objected as "leading and relevance," The Court sustained the objection for relevance (Dkt 175 at 1218:19-21, 1220:19-1221:2). In reality the jury did not hear evidence of the compensation of Wray, Gritton, and Tye because Howland didn't ask Gritton or Wray and objected to evidence of Tye's compensation. The fact is Hepworth had no role in preventing Howland from representing her client. Hepworth never objected to Howland's compensation questions. Howland knew how much they charged and chose only to ask Sweet about compensation, in an attempt to falsely manufacture bias.

**C. Howland's Violations of Fed. R. Civ. P. 45, Fed. R. Civ. P. 26, I.R.C.P. 3.3 and IRCP 4.1**

Howland has admitted she did not pay Sweet. (Dep. Howland attached as Ex. to Aff. JJH). Howland was required to pay Sweet a "reasonable fee for time spent" in responding to questions

in her deposition [FRCP 26(b)(4)(E)(i)] Howland knowingly violated the rule. Howland told Sweet she would pay her but didn't. Fed. R. Civ. P. 45 requires the Court to sanction the County and Howland for their violations. *See* Fed. R. Civ. P. 45(d)(1).

Howland violated IRPC 3.3 by making false statements of fact to a tribunal and failing to correct those false statements of fact. Even today, Howland has not filed a motion with the Court to correct her false statements about her knowledge of the billing rates of the Crosspointe witnesses and Dr. Tye.

Howland has violated IRPC 3.4(a) by unlawfully obstructing Hepworth's access to evidence that would prove Howland paid Mark Gritton and Shelly Wray for their depositions (or not). Hepworth attempted to obtain evidence from Howland to prove she knew all experts are being paid but Howland prevented discovery of that evidence (See Ex.45 to Aff of JJH). Howland violated IRPC 3.4(c) by knowingly violating Rules 45 and 26(b)(4)(E) by not paying Justine Sweet failing to take "reasonable steps" to protect Sweet.

Howland violated I.R.P.C 4.1 when she failed to disclose to Judge Dale that she had promised to pay Justine Sweet for her time, that Justine Sweet did not seek compensation for her deposition time and then accusing Justine Sweet of testifying falsely about her financial motives. Pam Howland knew as a fact Sweet was inexperienced and likely didn't understand her rights under FRCP 45 and FRCP 26. Howland had a duty to disclose to the Court and Hilliard's counsel these important facts. Howland intentionally misled the Court and defamed Sweet by claiming she committed fraud and perjury.

## III. <u>THE COURT HAS NO BASIS TO REJECT SWEET'S GAIN-I TEST</u>

The general rule is that testimony is for the jury to weigh. In this case the jury weighed the evidence and ruled for Hilliard. Interestingly, the Court also found Justine Sweet's uncontradicted

testimony "credible." The Court stated in the hearing:

> Court: And again, I'm basically—at this point, I intend to give the benefit of the doubt to Ms. Sweet that she was—when she answered that question saying, "I was being paid $40.00 for being here today." I vividly recall Ms. Sweet's testimony recall Ms. Sweet testimony and she did slow up here and she was one of the most credible witnesses at trial. I don't think she was misrepresenting anything at that time.

Motion Hrg. Tr. at 23:3-9 The law is clear the Court cannot disregard and must accept the uncontradicted testimony of an expert witness. As stated by the Idaho Supreme Court:

> It is true that the general rule is for the jury to weigh, consider or disregard. And that a jury verdict supported by substantial but conflicting evidence will not be set aside.
>
> However, the evidence here is not conflicting, and another well established rule governs this situation: The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, Court, or jury must accept as true the positive, uncontradicted testimony of credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability.

*Dinneen v. Finch*, 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979) (internal citations omitted). The Idaho Supreme Court also defined what it means by "improbable" testimony:

> "Testimony which is inherently improbable may be disregarded. But to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions."

*Dinnee*n, 100 Idaho at 627. In the case of *Franklin Supply Co. v. Tolman*, 454 F2d 1059 (1971), the Ninth Circuit Court also found that where undisputed expert testimony is presented on a topic requiring expert evidence, the fact must be accepted.

> "There was no expert testimony to the contrary. Under such circumstances where the answer is one requiring evidence from a professional, and that evidence is received, not contradicted and no reason appears to doubt the credibility of the witness or the accuracy or inherent probability of the opinion, the fact should be deemed established."

*Franklin Supply Co. v. Tolman*, 454 F2d 1059 at 1071 (1971). In this case, the County knew it required an expert opinion of substance abuse, rejected Dr. Tye's initial opinion Hilliard was "not an addict" and forced Hilliard to go to a "qualified evaluator." When they got the test result from the qualified evaluation, they simply ignored the test result. The Jury did not. This Court may not reject Justine Sweet's credible and undisputed test result and the County's intentional discrimination.

It is anticipated Defense counsel may again claim Fed. R. Civ. P 45 and Fed. R. Civ. P. 26 witness payments are evidence of the witness's credibility. However, that issue has also been addressed by the Ninth Circuit:

> One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying. That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture. But in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office.

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *accord. Marbled Murrelet (Brachyramphus Marmoratus) v. Pac. Lumber Co.*, 880 F. Supp. 1343, 1365 (N.D. Cal. 1995), *aff'd sub nom. Marbled Murrelet v. Babbitt*, 83 F.3d 1060 (9th Cir. 1996), *as amended on denial of reh'g* (June 26, 1996). This Court possesses its own legal duty to protect Justine Sweet from unjustified and factually unsupported character assassination. Based on the probative and newly discovery evidence, this Court has a legal duty to vacate its prior opinions relying on unsupported slander and deception.

## IV. HEPWORTH'S FINAL ARGUMENT ACCURATELY REFLECTED THE TRIAL TESTIMONY

The law is clear final argument is the appropriate time to discuss the evidence presented at trial including counsel's opinion of the veracity of the witnesses.

> "Of course, the counsel may, and often does, in argument to the jury, after the evidence has been presented, give the jury the benefit of his opinion of the veracity of the witnesses and the character and weight of testimony presented. That is the orderly manner and proper time to do so and the full duty which a lawyer owes to his client in this respect may then be fully discharged. A trial court has the duty of safeguarding the rights of all parties before it, and the United States of America was a party to the criminal action. Witnesses required to appear are entitled to protection from unjustified character assassination and vilification and a Court is not in a position to determine the extent to which it may properly allow counsel to comment upon the character of a witness or the weight and credibility of his testimony until that witness has testified."

*Halleman v. U.S.*, 182 F2d 880 at 885 (1950) (emphasis added) In Opening Statement, Howland repeatedly called Hilliard "not open and honest." Howland and Dr. Tye both assassinated Hilliard's credibility without any evidence to support the claim. The job evaluations of Hilliard were presented as evidence (Plf. Ex. 209) and explicitly and expressly graded his "integrity" and stated:

> I have always found Captain Hilliard to honest and upfront in his dealings with me…

(Ex. 209 at 4).

During trial Howland specifically asked Justine Sweet if she was being "paid for her testimony today." The obvious intent of the question was to imply Sweet was not credible because she was being paid. Based on facts that only defense counsel knew (i.e. they did not pay Justine Sweet for her deposition, nor did she request to be paid for her time), this was a clear attempt to manufacture false impeachment evidence. The word "testimony" was argumentative and misleading. When defense counsel asked their witness Czarnecki, they asked if he was being compensated for his "time." (Dkt. 178 at 48/2101: 24-25) and Czarnecki responded "yes" and then

$500 an hour. The County asked no further questions. When Dr. Cory testified the County again asked if he was "being compensated for his time." (Dkt. 178 at 144/2197:2-7). Again Dr. Corey only stated his hourly rates on direct exam. As a matter of law, FRCP 26(a)(2)(B) witnesses are required to disclose the compensation to be paid for their "testimony."

> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FRCP 26(a)(2)(B)(vi). In the Hilliard case, Dr. Czarnecki and Dr. Corey were paid "over $10,000" and "20,000" based on the evidence elicited in cross examination. It was absolutely fair for Plaintiffs counsel to contrast the difference between Justine Sweet, who conducted a State certified test and obtained a scientific test result before litigation and without any outside influence. This was not an attempt to "bolster" Sweet's credibility, but to simply demonstrate the absence of bias, compared to a retained expert who is fed only some of the facts provided by Defense Counsel and who is primarily motivated to earn compensation as a regular source of income.

At the time of the final argument, Jeff Hepworth knew that Justine Sweet was a "percipient witness" that conducted a substance abuse evaluation called a GAIN-I (trial ex. 206) on August 23, 2017.

> Well, so the GAIN will take all of the information from all of these questions that are being asked and pull it all together and come up with a conclusion. And that's what the conclusion was.

Dkt. 174 at 40-41. The report diagnosis was F32.1 Major Depressive Disorder, single episode, moderate-provisional. (Dkt. 174 at 41:9, Ex. 206. Sweet testified she does not "tweak" the computer generated report. (Dkt. 174 at 71/991:23-25). She testified the "purpose" of the test is to test for "significant substance use issues." Dkt. 174 at8 1/1001:5-6. The conclusion was "that there wasn't." The jury had only one question of Sweet, which the Court asked. The answer confirmed

the report was "GAIN wording." (Dkt. 174 at 103/1023:11-18).

Based on the testimony of Justine Sweet, her credibility as a person could not possibly be a material issue. Therefore, any payment made to Justine Sweet could not possibly change the written test result generated after the August 23, 2017 assessment. At the time of closing arguments, Jeff Hepworth had not received any bills from Ms. Sweet, nor did he have any basis to know what Ms. Sweet's "reasonable rate" would be. The only remuneration that had been tendered by Plaintiff to Ms. Sweet at the time of trial were the statutory "per diem" subpoena fees issued for two-days of anticipated in-court testimony and mileage prior to trial, at "$40 per day." *See* 28 U.S.C. § 1821(b). Hepworth's closing argument was premised upon the only admitted testimony at trial, which he perceived at the time to be a fair response to the ambiguous and improper question tendered by Pam Howland.

## V. CONCLUSION

This Court and counsel for Hilliard was not informed of the truth at the time this Court rendered its decision ordering a new trial under the auspices of Fed. R. Civ. P. 60. The withholding of material facts by Defendants was done in an improper and malicious attempt to deprive Mr. Hilliard and this Court of a properly executed and factually supported jury verdict. Plaintiff Brent Hilliard respectfully request that this Court vacate its previous order granting Defendant's motion for new trial, and reinstate the jury verdict and *Judgment* properly rendered at trial.

DATED this 28th day of September 2023.

HEPWORTH LAW OFFICES

/s/ Jeffrey J. Hepworth______
Jeffrey J. Hepworth
*Attorney for Plaintiff*